1

<pre>
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION

 3   -------------------------------x
                                    :
 4   UNITED STATES OF AMERICA,      : Criminal Action No.:
                                    : 1:23-mj-32
 5                                   :
           v.                       :
 6                                   :
     JAMES GORDON MEEK,             : February 6, 2023
 7                                   :
                    Defendant.      :
 8   -------------------------------x

 9              TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.,
10            UNITED STATES DISTRICT COURT JUDGE

11                  A P P E A R A N C E S

12   FOR THE GOVERNMENT:   ALEXANDRA ZOE BEDELL, AUSA
                           WHITNEY KRAMER, AUSA
13                         DOJ-USAO
                           2100 Jamieson Ave
14                         Alexandria, VA 22314

15   FOR THE DEFENDANT:    EUGENE VICTOR GOROKHOV, ESQ.
                           Burnham & Gorokhov PLLC
16                         1424 K St NW
                           Suite 500
17                         Washington, DC 20005

18

19

20

21

22

23   OFFICIAL U.S. COURT REPORTER:   MS. TONIA M. HARRIS, RPR
                                     United States District Court
24                                   401 Courthouse Square
                                     Tenth Floor
25                                   Alexandria, VA 22314
</pre>

─────────────────── United States v. Meek ───────────────────

2

1                     **P R O C E E D I N G S**

2    (Court proceedings commenced at 11:55 a.m.)

3

4              THE COURTROOM CLERK:  Criminal Case No. 2023-mj-32.

5    United States of America versus James Gordon Meek.

6              Counsel, please note your appearances for the

7    record.

8              MS. BEDELL:  Good afternoon, Your Honor.  Zoe Bedell

9    and Whitney Kramer for the United States.

10              MR. GOROKHOV:  Good afternoon, Your Honor.  Eugene

11    Gorokhov here for Mr. Meek, who is present at counsel table.

12              THE COURT:  Good morning, sir.

13              This matter comes on today on an appeal of the

14    magistrate judge's release order.  Counsel, I will let you

15    know that I've had the opportunity to read all of your

16    accompanying briefs and any letters that have been submitted.

17    So I'm well aware of the positions that the parties have taken

18    in this matter.  Having appeared before me before, you all

19    know that I like to try as best I can to get to the real core

20    issue in this case.  And the real core issue in this case is

21    -- and obviously, applying the applicable standard for whether

22    or not Mr. Meek should be given the privilege of being able to

23    remain out on bond, the Court is going to need to make an

24    inquiry into a couple of things.  I'll tell you the things

25    that I'm concerned about both from the government's

─────United States v. Meek─────

3

1    perspective and from the defense perspective.  From the

2    government's perspective, the concern that I voice is that

3    apparently Mr. Meek has been at liberty, until recently,

4    hasn't done anything, which would suggest that we know of that

5    he's gotten involved in any behavior which would cause the

6    court concern that he had the ability during those times to

7    actually flee if he had chosen to do so.  Obviously, we're not

8    encouraging that, but that opportunity was there.  And that he

9    has otherwise appears before the Court with a clean criminal

10   record and no suggestion that he is a person who would not

11   meet his obligation.

12          From the defense standpoint, the concern is this.

13   Number one is that, the allegations, and obviously that's what

14   they are right now.  Allegations are very serious.  There's a

15   presumption of no bond in a case such as this.  And based upon

16   the government's position in the matter, this isn't your -- I

17   can use this term -- "typical case," involving child

18   pornography, but apparently, according to the government, it

19   has taken on another level in that there's suggestion that he

20   was having contact with minors and was going through what we

21   say in the market, the grooming process, as part of his

22   criminal behavior.

23          So those are the two things that jumped out at the

24   Court for consideration from both perspectives.  I'll be happy

25   to hear any evidence, then we can go forward.  Why don't we go

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

EASTERN DISTRICT OF VIRGINIA

─────────────────United States v. Meek──────────

4

1    ahead.

2            Does the government have any evidence that it wants

3    to offer?

4            MS. BEDELL:  Your Honor, we would be offering the

5    complaint affidavit as we did last time so we can proceed with

6    that.  We do have the agent here, but we would not be offering

7    anything additional.

8            THE COURT:  I will tell you I would like to hear

9    from the agent because it was somewhat unclear.  And I'm going

10   to try to be as delicate as I can, that some of the

11   conversations that were supposedly taking place, allegedly,

12   between Mr. Meek and this presumed minor had some, shall we

13   say, rather indelicate language in it, and I was unable to

14   discern from looking at the complaint as to whether or not

15   that indelicate language was from Mr. Meek or someone that he

16   was speaking with.  I was unable to discern that.  So if

17   there's any evidence that would help me to understand whether

18   it was Mr. Meek saying these things or whether it was

19   allegedly -- or some other person, that would be helpful.

20           MS. BEDELL:  And, Your Honor, is there something

21   specific you're looking at there, one of the specific

22   instances of engagement with minors.  I know we have some of

23   the conversations laid out.  Was that where the source of

24   confusion was?

25           THE COURT:  Yes.

─────────────────────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438──

EASTERN DISTRICT OF VIRGINIA

───────────────────United States v. Meek───────────────────

5

1          MS. BEDELL:  Okay.  We can clarify that, Your Honor.

2          THE COURT:  All right.

3          MS. BEDELL:  In that case we'll call Tonya Griffith.

4          THE COURT:  Come on up, ma'am.  Ladies and gentlemen

5    in the courtroom, during the course of this proceeding you may

6    hear some indelicate language.  It is necessary for this

7    language to be used in the processing of this case.  If this

8    language is offensive to you or if you feel uncomfortable

9    hearing it, you're free to leave the courtroom at this time.

10   (TONYA GRIFFITH, Government's witness, sworn.)

11                          DIRECT EXAMINATION

12   BY MS. BEDELL:

13   Q.   Good afternoon.  Could you please state your name and

14   spell it, please.

15   A.   It's Tonya Griffith.  It's T-O-N-Y-A, last name is

16   G-R-I-F-F-I-T-H.

17   Q.   How are you employed?

18   A.   I'm an agent with the FBI.

19   Q.   How long have you been employed in that position?

20   A.   Over 20 years.

21   Q.   Could you describe some of your duties?

22   A.   I'm currently assigned to the child exploitation and

23   human trafficking task force.  I primarily work child

24   exploitation online.  So trading, distributing, online

25   production of child pornography, sextortion, those kinds of

─────United States v. Meek─────

6

1    violations.

2    Q.   Are you the lead agent assigned to the matter in court

3    today?

4    A.   Yes.

5    Q.   And when did you become the lead agent on this matter?

6    A.   A few months ago.

7    Q.   Did you prepare an affidavit in support of a criminal

8    complaint in this case?

9    A.   I did.

10   Q.   And with the assistance of the court security officer, I

11   will pass up what has been marked as Government's Exhibit 1.

12        Do you recognize this exhibit?

13   A.   I do.

14   Q.   What is it?

15   A.   It is the affidavit that I prepared for the complaint.

16   Q.   And what does it contain?

17   A.   It contains some of the facts known to me regarding this

18   investigation.

19   Q.   And is your signature on this document?

20   A.   Yes, it is.

21   Q.   Is the information contained in Government's Exhibit 1 a

22   true and accurate reflection of the facts as known at the time

23   the affidavit was executed?

24   A.   Yes.

25   Q.   Do you have any corrections or additions you need to

─────────United States v. Meek─────────

7

1    make?

2    A.    No.

3    Q.    For purposes of today's hearing, do you incorporate and

4    adopt the facts as set forth in the affidavit as part of your

5    testimony?

6    A.    I do.

7              MS. BEDELL:  At this time, Your Honor, I would like

8    to move to admit this into evidence.

9              THE COURT:  Without objection.

10             MR. GOROKHOV:  No objection.

11             THE COURT:  Okay.

12   (Government's Exhibit No. 1 was admitted into evidence.)

13   BY MS. BEDELL:

14   Q.    Can you take a look at page 3 of the affidavit and the

15   bottom of that page.

16   A.    Yes.

17   Q.    And displayed here is a conversation that's between

18   username 2 and Ponny 4 [sic], is that correct?

19   A.    Yes.

20   Q.    Which of these is understood to be Mr. Meek's username?

21   A.    Ponny 4.

22   Q.    And for username 2, do you know that individual's true

23   identity?

24   A.    No.

25   Q.    Do you know -- do you believe they are a minor?

United States v. Meek

8

1  A.  No.

2          MS. BEDELL:  Court's indulgence, Your Honor.

3          THE COURT:  Yes, ma'am.

4  BY MS. BEDELL:

5  Q.  Just a general question about the affidavit.

6          The number of individuals are referred to by

7  username and then a number, are those individuals understood

8  to be minors at this time?

9  A.  The ones that say "username" are believed to be adults.

10          (A pause in the proceedings.)

11  BY MS. BEDELL:

12  Q.  There's a reference to -- excuse me, username 1.

13          Do you have any reason to believe that individual is

14  a minor?

15  A.  No.

16  Q.  And at the bottom of page 6 and onto page 7, there's a

17  discussion of username 1 -- a conversation with username 1

18  regarding a fantasy.

19          Do you have any reason to believe that happened

20  while username 1 was a minor?

21  A.  No.

22          MS. BEDELL:  Your Honor, does that address some of

23  the confusion or --

24          THE COURT:  Somewhat, yes.

25          MS. BEDELL:  Okay.  Are there any additional

─────United States v. Meek─────

9

1    questions you would like to pose to the agent at this time

2    because otherwise that would conclude my questions.

3           THE COURT:  Just a few.  Obviously, you can

4    follow-up.

5           Ma'am, obviously, during the exchange between the

6    person alleged to be Mr. Meek and the minor, was there anyone

7    else involved in the conversation?

8           THE WITNESS:  With the minor?

9           THE COURT:  Yes.

10          THE WITNESS:  No.

11          THE COURT:  So it was a one-on-one conversation?

12          THE WITNESS:  Yes.

13          THE COURT:  Was that the context of most of the

14   conversations that you were able to discern?

15          THE WITNESS:  With the individuals we believe to be

16   minors, yes, or we have identified as minors, yes.

17          THE COURT:  Have you actually had personal or direct

18   contact with the individual you believe to be a minor?

19          THE WITNESS:  One of them, yes.

20          THE COURT:  Okay.  And based upon your observation,

21   was this person indeed a minor?

22          THE WITNESS:  Yes.

23          THE COURT:  Okay.  All right.  Any questions as a

24   result of the Court's questions?

25          MS. BEDELL:  No follow-up questions from me, Your

———United States v. Meek———

10

1    Honor.

2             THE COURT:  Mr. Gorokhov.

3                      CROSS-EXAMINATION

4    BY MR. GOROKHOV:

5    Q.   First of all, can you tell the Court -- you said you've

6    been involved in this for the last few months.

7             Can you tell the Court when you got involved in this

8    investigation?

9    A.   I don't remember the exact date, but it was a few months

10   ago.  Approximately three months ago, two or three months ago.

11   Q.   Okay.  Is it fair to say this investigation has been

12   going on for over a year?

13   A.   That's correct.

14   Q.   Now, with respect to your affidavit, do you have that in

15   front of you?

16   A.   Yes.

17   Q.   The -- sorry, Your Honor.

18            Paragraph -- directing your attention to

19   paragraph 6, do you see there's a reference to an iPhone 8?

20   A.   Yes.

21   Q.   That was seized from, allegedly, Mr. Meek's apartment?

22   A.   Yes.

23   Q.   You did not participate in that search, did you?

24   A.   I did not.

25   Q.   Did you participate in the imaging of the phone?

─────United States v. Meek─────

11

1   A.   I did not.

2   Q.   Did you participate in creation of any reports from the

3   imaging of the phone?

4   A.   No, not the original reports, no.

5   Q.   Did you review the material from the reports?

6   A.   Yes.

7   Q.   Okay.  So basically what you're saying is at some point,

8   when you became involved a few months ago, digital data was

9   handed to you and that's what you reviewed?

10  A.   Yes.

11  Q.   And directing your attention to paragraph 24, which is on

12  page 8.

13  A.   Yes.

14  Q.   There's a reference to an iCloud account there?

15  A.   Yes.

16  Q.   Did you personally review material from an iCloud

17  account?

18  A.   Yes.

19  Q.   Okay.  Did you participate in the imaging of the account?

20  A.   No.

21  Q.   So you didn't do any of the forensic imaging, any of the

22  actual forensic work involved in this case?

23  A.   No.

24  Q.   By the time you got involved in this case, you were

25  handed something that was done by somebody else and then you

──────────────United States v. Meek──────────────

12

1  began to review that material?

2  A.   That's correct.

3          MR. GOROKHOV:  Thank you.

4          THE COURT:  Just a couple of questions from the

5  Court.

6          Ma'am, were you present when Mr. Meek was arrested?

7          THE WITNESS:  No, I was not.

8          THE COURT:  Who was present at that point?

9          THE WITNESS:  There were other agents from the FBI

10 that conducted the arrest.

11         THE COURT:  It's alleged that when Mr. Meek was

12 arrested he said something to the effect of:  My life is over.

13         I'm paraphrasing, but if I'm incorrect, you can

14 correct me on that.

15         Have you had any conversations with anyone regarding

16 that?

17         THE WITNESS:  No, I haven't.

18         THE COURT:  Any questions as a result of the Court's

19 questions?

20         MS. BEDELL:  One quick question, Your Honor.

21                    REDIRECT EXAMINATION

22 BY MS. BEDELL:

23 Q.   Special Agent Griffith, the comment about the life being

24 over.  Was that made at the time of arrest?

25 A.   My understanding is that it was made during -- at the

──────United States v. Meek──────

13

1   interview during the search warrant.

2          THE COURT:  Okay.

3          MS. BEDELL:  That's all, Your Honor.

4          THE COURT:  Thank you.  You may step down, ma'am.

5          Any other witnesses?

6          MS. BEDELL:  No, Your Honor.

7          (Witness excused.)

8          THE COURT:  Mr. Gorokhov, any witnesses?

9          MR. GOROKHOV:  No witnesses, Your Honor.

10          THE COURT:  Offer of evidence the way that we'll

11  handle this is -- the government being the proponent of the

12  motion, I'm going to allow you to go first.  Take as long as

13  you want.  Mr. Gorokhov, you can respond and I'll let you have

14  your rebuttal.  And you know me, I'm going to ask questions as

15  we go so be prepared.

16          MS. BEDELL:  I'm happy to direct my argument where

17  you find most useful.

18          Your Honor, obviously, you have read the affidavit

19  and you are familiar -- both that this is a presumption

20  offense and that we have offered significant evidence

21  detailing very serious harm to the community here.

22          So obviously, the trafficking conduct is extensive

23  and extends beyond the one count of transportation of child

24  pornography, but also goes beyond that to engaging with minors

25  online and inducing --

┌─ United States v. Meek ─

14

1          THE COURT:  We can all agree that the allegations

2   are very serious and I think Mr. Gorokhov will even agree that

3   this is a presumption case, presumption of no bond.  But the

4   concern is, as I articulated earlier, apparently there is at

5   least, from what I can tell, seven, eight, ten months between

6   the time that Mr. Meek was directly implicated in the wrong

7   that the government alleges and where we are today.  And from

8   what I've been made to understand, and please correct me if

9   I'm wrong, there's been no suggestion that he's tried to flee,

10  that he's been available, people have known where he is,

11  apparently he is living with his mother, and apparently he has

12  divorced himself from society to great degree and is basically

13  not doing very much at all.

14          So what has changed between April and now other than

15  the fact that he was formally arrested?

16          MS. BEDELL:  Well, I think that fact is significant,

17  Your Honor.  I would say that our focus in this argument is on

18  danger to the community rather than as much on his concern

19  about fleeing.  But to address the delay, if you will, as you

20  can tell from the affidavit there were, obviously, numerous

21  devices seized at the execution of the search warrant and

22  there's a large volume of data involved in reviewing the

23  content of those devices.

24          So, for example, we referenced the 2 Terabyte Hard

25  Drive which is just a tremendous amount of data right there.

───────United States v. Meek───────

15

1   It was filled primarily with pictures and images and backed up

2   data.  So that alone was a significant undertaking to go

3   through and understand what evidence was there and we had

4   several devices like that.

5           THE COURT:  While this case isn't a sentencing case

6   in which we look at 3553(a) factors and all of that and

7   compare sentences received by one person with the sentence

8   that is proposed.  And in another case, Mr. Gorokhov is taking

9   the analytical perspective to another level saying that there

10  are people who are similarly situated, every case is

11  different, who had been allowed to remain out on bond pending

12  their actual disposition.

13          What would you say in response to that?

14          MS. BEDELL:  There are also a significant number of

15  cases where people who are similarly situated have been

16  detained.  For example, Judge Nachmanoff just detained someone

17  on a revocation or, excuse me, on a motion to revoke, an

18  order approximately a year ago, in a similar situation

19  involving online exploitation.  Now, all of these cases have

20  distinguishable factors, that is why it is an individualized

21  assessment, but courts in this district do regularly detain

22  individuals for the trafficking offenses, but we have here is,

23  frankly, more than the trafficking offense.  It is the online

24  exploitation of children which is a real harm to the

25  community.

United States v. Meek

16

1          THE COURT:  Mr. Gorokhov has also made reference to

2   his client's standing in the community and I think we can all

3   admire what he has done as far as making sure that our

4   government is transparent, that things that happen are fully

5   divulged, particularly to loved ones, who are impacted

6   directly by the government's involvement in these kinds of

7   things.  And Mr. Gorokhov has suggested that that is something

8   that we should consider, not necessarily the things that is

9   going to decide the case, Mr. Meek's standing in the

10  community, which I think is a good standing for what he has

11  done and has proven to be done.

12          What would be your response to that, ma'am?

13          MS. BEDELL:  Certainly, that is a relevant

14  consideration of the nature and circumstances of the offense

15  and the defendant.  But we will say that the affidavit details

16  conduct going back to at least 2014, Your Honor.  So he

17  engaged in all of that admirable conduct, he won those awards,

18  he was an investigative journalist, he parented his children

19  while he was engaging in this criminal conduct that's detailed

20  in the complaint.

21          So it's clear that while it may be commendable, it

22  just doesn't have an effect on his engagement in criminal

23  activity, and he's proven himself adept at carrying on both

24  facets of his life at the same time and also concealing that

25  from the people around him, which raises concerns about a

—United States v. Meek—

17

1   third-party custodian regardless of how well-intentioned they

2   may be, their ability to supervise that kind of conduct,

3   because he's been engaging in this as he's carried on that

4   life.

5         THE COURT:  Interestingly enough, and Mr. Gorokhov

6   gets credit for this, Mr. Gorokhov has provided letters of

7   reference from people in law enforcement, which I'm sure you

8   can understand may actually carry a little bit more weight

9   when a person in law enforcement sort of steps up for an

10   individual saying that, I believe that this person is

11   deserving of maintaining his freedom.

12         MS. BEDELL:  Well, if that person were here, Your

13   Honor, I'd wonder if they would have said I understood that he

14   was engaged in that conduct before these allegations became

15   public.

16         THE COURT:  I think that's fair.  All of the letters

17   say I don't really know what's really going on here.  One of

18   the letters say, I hear it involves child pornography and

19   that's very serious.  The person was very, very, shall we say,

20   insightful as to the standard we need to take a look at, but,

21   again, they were willing to put their name out there for him.

22         MS. BEDELL:  And it is wonderful for the defendant

23   that he is in a position where he is able to muster that

24   support and certainly not all the defendants are, but I just

25   don't think it reflects on the danger that he poses because

─────────────────United States v. Meek─────────────────

18

1   these individuals, you know, if this were a character witness

2   that was testifying, the thing you would draw out is you

3   didn't know he was engaged in this behavior in the first

4   place, you don't live with him, you're not observing him on a

5   day-to-day basis, you just don't necessarily know what's going

6   on in someone's life when there's conduct that they're trying

7   to conceal.

8          THE COURT:  Okay.  I'll let you follow-up after

9   Mr. Gorokhov.

10         MS. BEDELL:  Thank you, Your Honor.

11         THE COURT:  Mr. Gorokhov.  You've gone a good job

12  presenting the best case you can for your client, but as you

13  understand this is a presumption case and the statutes that we

14  look at basically say it's a super-presumption case.  It can

15  be rebutted, but there is to be a real strong case to be made

16  to rebut this kind of situation.  Again, I think your biggest

17  hurdle to overcome is that the government's allegations

18  suggest grooming, and we all know what that term means.  And

19  that is a big concern to the Court and that not only is this

20  individual alleged to have been engaged in the use and

21  solicitation of child pornography, but arguably, if this is

22  indeed true, is taking it a step further by actually having

23  contact with minors.

24         What would be your response?

25         MR. GOROKHOV:  Yes, Your Honor.  So first of all, I

─────────United States v. Meek─────────

19

1    think it is important to address the standard here, which what

2    presumption means and what presumption doesn't mean.  And I

3    think that frequently gets lost and misinterpreted so which is

4    why we had filed, prior to the last detention hearing, we

5    filed an actual memorandum.  What the presumption standard

6    says is that Mr. Meek does have a burden, a burden of

7    production which Courts have repeatedly said is a very low

8    burden, a very low burden, a limited burden.

9            If he comes forward to show that there are, based on

10   his background, characteristics, et cetera, conditions of

11   release that are likely, not guaranteed, merely likely to

12   ensure that he's not a danger to the community, the

13   presumption then shifts back to the government and we're back

14   in the world of any normal bail case.

15           And what I submit, Your Honor --

16           THE COURT:  If that's indeed the case if the

17   analysis was that simple, why did Congress come up with this

18   term, "presumption" and take it a step further and talk about

19   the strong presumption?

20           MR. GOROKHOV:  Your Honor, it's never -- I mean I

21   have the memorandum here and I can quote from it.  It is filed

22   on the docket.

23           THE COURT:  Sure.

24           MR. GOROKHOV:  But the courts have repeatedly said

25   it's limited to a burden of production.  I think Congress,

─────United States v. Meek─────

20

1   Your Honor, in creating the scheme understood the liberty

2   stakes that are at interest, the important liberty stakes that

3   are at interest for an individual who's been merely accused by

4   the government.  And I do want to talk about the weight of the

5   evidence because I think that's a big problem here for the

6   government.

7           But an individual who's been merely accused, who on

8   the basis of a complaint affidavit signed by an agent, who

9   only had recent participation in the investigation, now he has

10  to be locked up.  That's why Congress placed a very limited

11  burden on defendants, even in presumption cases, merely to

12  come forward with the burden of production to show --

13          THE COURT:  And I agree with you because there has

14  to be some consideration of the concept of innocent until

15  proven guilty beyond a reasonable doubt.  So there needs to be

16  a reasonable balance in that, so I get that.

17          MR. GOROKHOV:  And I think what Mr. Meek has come

18  forward with, Your Honor, meets not merely a burden of

19  production, but I would submit to Your Honor an overwhelming

20  burden that Mr. Meek will follow the conditions of release

21  that he will do what he is told.

22          THE COURT:  Let me ask a general question.  If you

23  don't want to answer it, I appreciate it.  The agent testified

24  with regard to certain devices that were seized and certain

25  forensic analysis that was done, and again you don't have to

─────────────────── United States v. Meek ───────────────────

21

1    answer this if you don't want to.  Is there anything that you

2    believe as part of your theory of defense that these items

3    were not his?

4              MR. GOROKHOV:  Your Honor, to be honest with you

5    this is a unique situation.  I might want to answer that

6    question if I could.  But I have not received a shred of

7    discovery.  And that's another -- that's, I think that's

8    another one of those major weighty issues, because we're

9    supposedly, in this adversarial world, where, you know,

10   government doesn't just get to make accusations and we sit

11   here with our hands tied behind our back and blindfolded.  But

12   that's, in effect, what's happening.  They've put on an agent,

13   even here today, who had participation in only a small

14   fraction of the investigation and everything she's reviewed

15   was handed to her by someone else who obtained the evidence,

16   imaged the evidence.  And as Your Honor knows, we've been

17   through this before.  The devil is in the details when it

18   comes to these forensic reviews.

19             So quite simply, Your Honor, I'm sitting here with

20   like my hands tied behind my back as to the allegations.  What

21   I will say, regarding Your Honor's question on grooming, is

22   that the government can't speak out of both sides of its mouth

23   here.  On the one hand, it says the conduct goes to 2014, on

24   the other hand, they come forward with zero evidence and not

25   even an allegation that Mr. Meek ever attempted to meet a

─────────────────United States v. Meek─────────────────

22

1  child, tried to meet a child, you know, had improper physical

2  contact with a child.  Grooming, generally, refers to kind of

3  priming a child so that you can then go and have contact with

4  that child.

5          THE COURT:  Unfortunately, both you and I and the

6  representatives of the government have a lot of experience in

7  these kinds of cases and I think we all understand that in

8  these kinds of cases there's a continuum that we tend to see.

9  It starts out with a little something, then it sort of evolves

10 into something else, and then there's a grooming, which from

11 what I understand and the science, can take a period of time,

12 and then you get the meeting, and then you get the act.  So

13 it's a process.  I'm not suggesting that your client did this,

14 but his -- the allegations against him suggest that continuum.

15         MR. GOROKHOV:  Well, Your Honor, but then again if

16 he -- if they say the conduct goes back to 2014 and have

17 absolutely zero evidence and not even an allegation that he

18 tried to meet a child, I think that -- I think the conclusion

19 there is -- it was never his intention to meet a child.

20 Assuming -- I'm saying these are allegations, Your Honor.

21         THE COURT:  Yes.

22         MR. GOROKHOV:  But I think the fair conclusion there

23 is not that he was preparing after nine years to finally go

24 meet a child.  I think the conclusion is that that was never

25 his intention, you know, that was never his intention.  And I

─────────────United States v. Meek─────────────

23

1  think we have to give a defendant some benefit of the doubt.

2  He can't -- you know, he can't be that the government comes

3  here and puts forward a theory and, you know, and he's

4  helpless to defend against that.

5          THE COURT:  But what I'm assuming Ms. Badell is

6  going to come back with is that because of the nature of this

7  kind of offense that one could argue, again, looking at

8  allegations here, that Mr. Meek, according to the government,

9  was starting to begin the process of acting on his fantasies.

10          MR. GOROKHOV:  Again, Your Honor, I think that's a

11  theory.  I think even beyond, you know, accusations that

12  aren't even returned by a grand jury but signed by an agent

13  with limited knowledge of an investigation, to pile on top of

14  that a theory is, you know, a step much too far when you have

15  an individual like Mr. Meek.  And I want to address the

16  evidence about his life and the way he's lived his life.  But

17  to come here and spin out a theory about something he might

18  have done, I would say, Your Honor, even beyond --

19          THE COURT:  And another question that I'm going to

20  ask Ms. Bedell when she gets back up is if this case was as

21  sensitive and, I think, developed as is being suggested by the

22  government, why did it take so long to even go to the grand

23  jury to seek an indictment?  That's a question that I would

24  have, but, again, we'll hear.

25          MR. GOROKHOV:  Yes, Your Honor.

United States v. Meek

24

1            THE COURT:  Let's hear about your client.

2            MR. GOROKHOV:  Yes, I do want to address the

3    situation with my client.  You know, in terms of his

4    background, I have tried to be as both complete and concise as

5    I could, so I'm not going to stand here and repeat everything

6    that I know Your Honor has reviewed in detail.  What I will

7    say is I think it's extraordinary that Mr. Meek has an

8    individual like Spike Bowman, you know, a person who was the

9    head of the National Security Law Unit of the FBI and spent

10   his life working in national intelligence and law enforcement.

11   And he knows the allegations against Mr. Meek and he's putting

12   his name forward saying that Mr. Meek will keep his word.

13            An individual like Raymond Gannon, 28 years in the

14   FBI, Your Honor.  An individual like Douglas Kimmy, 27 years a

15   police officer and a former member of the U.S. military.

16   These things should not be taken lightly and I know the Court

17   doesn't take them lightly.  And so, when we say "similarly

18   situated defendants," I know the government referred to an

19   individual that had Judge Nachmanoff had considered, I don't

20   think there's really a comparable individual.  I would go so

21   far as to say that.

22            In terms of kind of his record of good works in the

23   community and the people that are willing to stand behind him

24   in the community knowing what they know about the allegations

25   in this case.

United States v. Meek

25

1        The government says --

2        THE COURT:  I think we can all agree the things that

3   Mr. Meek has done are heroic, no doubt about it.  But even

4   heroic people can lose their way, and that's, I believe, what

5   the government is suggesting here.

6        MR. GOROKHOV:  I understand that.  But what the Bail

7   Reform Act says is we're at a stage where we haven't heard any

8   evidence, all we have are accusations.  Right.  And in these

9   circumstances, the reason why we considered the background

10  history and, you know, community ties and all of those things

11  is because the Court has to make a determination based on how

12  much faith they can place on an individual.  And so, the Bail

13  Reform Act tells us these things matter.  These things matter

14  a lot, because the accusations haven't been proven yet but

15  this man's track record, to some degree, proven by among other

16  people, someone like Spike Bowman who is standing by his side.

17        And I would like to say the government says well all

18  of that is good and well but Mr. Meek was doing these heroic

19  acts and has the support of all these people, but at the same

20  time he was committing horrible crimes.  Well, if that

21  argument held any water, Your Honor, if that argument held any

22  water, then it would invalidate an entire section of the Bail

23  Reform Act because every individual who comes before the

24  Court, the Court has to consider their background, history,

25  and characteristics.  And if the government's argument were

─────────United States v. Meek─────────

26

1   true, the Court could simply say, yeah, but he was doing

2   crimes so I'm not going to consider those things.  So their

3   argument absolutely makes no sense.  It's illogical and it's

4   completely contrary to the way that Congress intended this to

5   work.

6           THE COURT:  I had an opportunity to review the

7   hearing before Judge Vaala, and I actually talked with Judge

8   Vaala to find out what was going on in the case because I

9   needed to prepare quickly.

10          MR. GOROKHOV:  Yes, Your Honor.

11          THE COURT:  And in the, I think, the hearing itself

12  she said something to the effect of "it's a close case."  I

13  think those were the terms that she used.  If indeed it was a

14  close case, analytically, doesn't that sort of argue against

15  your position?

16          MR. GOROKHOV:  No, Your Honor.  I think the question

17  is there's -- it's either a yes or no question.  Either there

18  are conditions of release, in which case release is not

19  discretionary, it's mandatory, or there simply aren't

20  conditions of release.  And what Judge Vaala said is, Yeah, to

21  me it's a close case, but I think there are conditions of

22  release, and at that point the Bail Reform Act says release at

23  that point is mandatory.  The conditions are discretionary.

24  So the extent of supervision and all of that.  But once that

25  threshold is crossed that there are conditions that would

───────────United States v. Meek───────────

27

1    reasonably assure.  And I think it's important here, Your

2    Honor.  The government kind of pretends that, you know, there

3    has to be a guarantee.  And while I submit to Your Honor

4    letters in support from individuals like the ones he has are

5    as close to a guarantee as the Court can get.  The cases say

6    otherwise.  The cases say there just has to be a reasonable

7    assurance that the conditions of release.  There's no

8    guarantees in life and there's no guarantees under the Bail

9    Reform Act.  And the courts recognized that it has to be

10   merely a reasonable assurance that he's going to appear.

11          And I do want to talk, Your Honor, about the

12   evidence, the overwhelming evidence that he's going to appear.

13   And that he's not going to violate the conditions of release.

14   But before I do, I wanted to say also that Your Honor referred

15   to these comparator cases that we cited, and what I want to be

16   clear is these cases are not similar to Mr. Meek's, these

17   cases are worse than Mr. Meek's, because in these cases

18   individuals either had sexual contact with minors, without

19   question, or they were on their way, they were doing the thing

20   that the government is theorizing that maybe Mr. Meek one day

21   might have gotten around to doing.

22          In those cases, these individuals were either

23   sexually engaging with minors hands on or on their way to do

24   so, and they were stopped by law enforcement.  And yet, judges

25   in this court have repeatedly said, well, you know, I look at

─────────────── United States v. Meek ───────────────

28

1    the background and history and characteristics and I find that

2    release is appropriate.  So I would say, Your Honor, that,

3    given his background and given that his crime is certainly not

4    as serious as the ones we talked about, certainly there can be

5    conditions of release.

6              I wanted to address the government's other argument,

7    which is -- I know Your Honor wants to know about Mr. Meek's

8    statement about supposedly his life being over.  And I think

9    this one is really an argument that I really didn't expect the

10   government to repeat because --

11             THE COURT:  I think the reason why they're

12   suggesting that is because one of the inquiries that the Court

13   must make is whether or not he's a danger to himself.

14             MR. GOROKHOV:  Yes, Your Honor.  And here the

15   evidence, again, is overwhelmingly in favor of Mr. Meek that

16   he's not a danger to himself.  In April, Mr. Meek's apartment

17   was searched and Mr. Meek realizing that his apartment was

18   being raided by armed federal agents made, I would argue, the

19   accurate observation that his life was, in a sense, over.

20   Because he was in a high power -- a high profile investigative

21   journalist, and when you're in his position and this kind of

22   thing happens, your professional life is certainly over.  And

23   what has Mr. Meek done -- so it's a true statement.  And you

24   know it's a statement of an individual whose head is very much

25   in the realm of reality, right.  And what has he done since

─────────────────────United States v. Meek─────────────────────

29

1   the nine months since his apartment was raided?  You know the

2   government talks about the fact that he left his job and moved

3   out of his apartment.  Well, he left his job because he didn't

4   want to continue working as an investigative journalist at ABC

5   News while he was under federal investigation.

6           THE COURT:  That makes sense.  I buy into what

7   you're saying and plus he did something, which I thought was

8   somewhat redemptive in that apparently he was up for an award

9   with another person and did not want to embarrass that person

10  by showing up when he was under federal investigation.  That

11  shows something.

12          MR. GOROKHOV:  And he moved in with his mother

13  because he wasn't going to have an income, right.  That's a

14  responsible, conscientious thing to do.  He notified the

15  government that he was moving in with his mother.  He offered

16  to give the government his passport.  The government didn't

17  accept his offer.  He, you know, all the time I repeatedly

18  told the government if there's anything you need to know about

19  Mr. Meek, where he is, what he's doing, or anything like that,

20  please tell us because we want this to be, you know -- we want

21  there to be no surprises, we want to be --

22          THE COURT:  Transparent.

23          MR. GOROKHOV:  He relinquished his firearms and put

24  them in a storage unit where only his mom and another

25  individual have access.  He does not have access.

────────United States v. Meek────────

30

1        He's done all of these things, Your Honor, and I

2  would say these are the things that a person who is

3  responsible and conscientious does.  And there's overwhelming

4  evidence that he's going to take orders imposed by this Court

5  very, very seriously.

6        And you know, Your Honor, I would go so far as to

7  say that if it's not Mr. Meek who is released, you know, what

8  kind of a message does that send.  We want people to be

9  cooperative.  We want people to behave exactly the way

10 Mr. Meek behaved after he realized that he was being looked at

11 by the government.

12       And so, I would say, Your Honor, for the government

13 to come up here and twist his actions and his statements into

14 like him being some kind of a danger to himself, I think that

15 kind of hurts more than just Mr. Meek.

16       The final thing I will say, Your Honor, is the

17 government says that, you know, because the nature of his

18 alleged defenses are computer offense, computer-based offenses

19 we can't monitor what he's doing.  And that is a -- again,

20 another extraordinary argument they've brought, because it

21 would --

22       THE COURT:  I have something in common.  The Fourth

23 Circuit had a question for me when they remanded a case that

24 we did.  I was correct on most of it and they remanded a case

25 to me because they wanted me to explain why I would prevent a

31

1  person convicted of child pornography not to have access to

2  adult pornography and video games, which I found a little bit

3  perplexing, but, again, that's the way they look at it.  So

4  it's actually to your advantage.

5          MR. GOROKHOV:  And I think for the government to

6  come here and say you can't monitor people who commit crimes

7  online is to write an entire category of people out of the

8  Bail Reform Act.  It's inconsistent with the recommendations

9  of pretrial office -- the pretrial office, which says there

10  are conditions that can be imposed.

11          THE COURT:  Answer this for me, Mr. Gorokhov.

12  Again, I'm not suggesting that your client will do this.

13  We're talking from a hypothetical standpoint.

14          MR. GOROKHOV:  Yeah.

15          THE COURT:  Suppose there's an order in which I

16  preclude him from having access to the internet and you agree

17  to that and I preclude him from having access to adult

18  pornography and you agree to that, the government and the

19  probation office are going to focus on what is in his home,

20  what he actually has direct access to.

21          What is to prevent someone from giving him something

22  that he could access through another means that he does not

23  have any real connection to?  Where is the check and balance?

24  A probation officer can't be with him 24/7.  It can only do

25  random checks.

─────────────────United States v. Meek─────────────

                                                              32

1          MR. GOROKHOV:  Well, I think, again, the first if we

2    were just talking about a general person and not Mr. Meek,

3    just, you know, your average defendant, right, I think the

4    answer there would be the law requires reasonable assurance

5    and the pretrial services office believes they can provide

6    reasonable assurance through the measures that they talk about

7    in their report.  Right.

8          Now, we add Mr. Meek into the mix and we add the

9    fact that the way he's conducted himself over the last nine

10   months, we add the fact that the people who know him

11   intimately, not just any old regular people, but law

12   enforcement people, are willing to vouch for him, you add all

13   of that into the mix and basically what it comes down to is

14   that Mr. Meek will keep his word.  And Congress, as I've said

15   before, Your Honor, Congress does not require an absolute

16   100 percent guarantee.  Congress requires a reasonable

17   assurance.

18         THE COURT:  But there at least appears to be some

19   tension between the Bail Reform Act and the standard for this

20   kind of case and the presumption of no bond.

21         Where is the sweet spot?

22         MR. GOROKHOV:  I think the sweet spot is if the

23   defendant can come forward with a low burden, burden of

24   production, now it's back to the government like any old case.

25   And again, Mr. Meek has come forward not just with a burden of

─────────────United States v. Meek─────────────

33

1  production, Your Honor, but I would say overwhelming evidence.

2  Nine months of evidence at least, arguably 30 years of

3  evidence that he is a man of his word and he will do exactly

4  what this Court tells him to do.  And he will abide by these

5  conditions of release to the letter and he knows the

6  consequences, Your Honor, if he does not.  He's living those

7  consequences right now in a cell where he's by himself 24

8  hours a day.

9        THE COURT:  Ms. Bedell, you get the last word,

10  ma'am.

11        MS. BEDELL:  Your Honor, just to address a small

12  point first and then respond more directly to some of the

13  questions and points that were raised.  So just to the point

14  about discovery, on February 2nd I did inform Mr. Gorokhov

15  that the FBI had evidence available for the defendant's review

16  and we were happy to facilitate that.  Understandably, he did

17  not take the limited time between now and then, but it was

18  made available, and, frankly, it just does not go to the

19  weight of the evidence.  The fact that his cross-examination

20  has been limited to questions about when we learned certain

21  information, again, demonstrates that very strong evidence

22  here.

23        I also want to address, I think, put a little bit of

24  a misperception that seems to be coloring some of the

25  discussion here and that the only harm to children is through

─────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────────
EASTERN DISTRICT OF VIRGINIA

───────United States v. Meek───────

34

1  physical contact, and also relatedly that grooming is only

2  leading up to physical contact.

3          Now, it is correct that we do not have allegations

4  in the complaint that relate to meeting up with a child in

5  person, and to me that is not relevant.

6          THE COURT:  And I appreciate the fact that because

7  of this type of litigation and because of the statutory

8  framework that Congress came up with that it is clear that the

9  grooming is one aspect of it.  The fact that you victimized

10 children by subjecting them to being part of the internet

11 interplay between people of similar desires is the greater

12 concern in this kind of case, so I get that.

13         MS. BEDELL:  Thank you, Your Honor.  And there's the

14 trafficking harm, which in some ways, you know, I think we

15 quoted, is a repetition of the abuse.  But the fact is that

16 online exploitation, what we've seen Mr. Meek engaging in,

17 he's the original abuser there.  He is an original victimizer.

18 It is not just if he had met up with someone in person.  So it

19 sounds like you understand that.  I appreciate that, Your

20 Honor.

21         I also wanted to address something you mentioned at

22 the very beginning that you said we hadn't seen any

23 problematic behavior from him since April.  I would agree

24 that's accurate regarding risk of flight, but we can't make

25 that statement when we talk about what he's doing online.  The

United States v. Meek

35

1   fact is that we don't know what he's been doing online since

2   that time.  So I don't think we can say that just because we

3   haven't caught him doing something in the last period doesn't

4   mean he's not a continuing harm to the community even in the

5   intervening nine months or whatever the period is.

6           To answer your question about why it has taken so

7   long, I was addressing the point about the voluminous data,

8   and understandably we have to understand what the evidence is

9   and just because you even get into the phones, some of these

10  phones were password protected.  Just because you get in, it

11  doesn't mean the evidence immediately reveals itself.

12          The other part is that, of course, you're familiar

13  with the timelines in this district.  And so, we have a

14  careful line that we have to strike between charging a

15  defendant and making sure we still have the opportunity we --

16  we need to complete our investigation.

17          To the point about an affidavit versus a complaint,

18  cases in this district are regularly charged by affidavit.

19  They provide ample evidence for the Court to review more so

20  than what might be available if something had come before this

21  Court for a detention hearing in an indictment posture.  And

22  so, I do think that is ample evidence and also certainly not

23  outside the realm of normal practice.

24          I wanted to address the argument that our approach

25  would invalidate the Bail Reform Act.  And I just, obviously,

─────────────United States v. Meek─────────────

36

1    don't agree with that.  I think the inquiry here is the

2    balancing inquiry, and, you know, just saying that electronic

3    monitoring is sufficient would invalidate in the other

4    direction.  There will always be some condition that could

5    satisfy if electronic monitoring suffices.

6          So the question here is whether the available

7    conditions are appropriately balanced against the risk of

8    harm.  And again, we have a situation here where we have an

9    original abuser.  He is engaged in that original harm.  And

10   so, I submit, as we've been arguing, and I won't reiterate all

11   of those points, but that is not satisfied in this specific

12   instance.

13         And I believe those are all the points I would like

14   to make unless you have additional questions that you would

15   like to address.

16         THE COURT:  No, ma'am.

17         MS. BEDELL:  Thank you, Your Honor.

18         (A pause in the proceedings.)

19         THE COURT:  I'm going to state the applicable law

20   and the analytical perspective that the Court is going to

21   provide to justify the conclusion that's reached here.

22         A government appeal of a magistrate's release order

23   is governed by 18 U.S.C. 3145(a).  The review of the

24   magistrate's decision is *de novo* as we have conducted here

25   under the *United States v. Stewart* case, a 2001 case out of

───────────United States v. Meek───────────

37

1   the Fourth Circuit.

2           In this regard, the Court makes an independent

3   determination of a proper pretrial detention or conditions of

4   release.

5           To determine that a person should be detained

6   pending trial, a Court must find "no condition or combination

7   of conditions will reasonably assure the appearance of the

8   person as required and the safety of any other person and the

9   community."

10          If there's probable cause to find that the defendant

11  committed an offense involving a minor, a rebuttal presumption

12  arises that no condition or combination of conditions will

13  reasonably assure the safety of other persons and the

14  community.  That is governed by 18 U.S.C. Section

15  3142(e)(3)(E).

16          In such a case, a defendant bears the burden of

17  production to come forward with evidence to suggest that the

18  presumption is unwarranted in his or her particular case.  If

19  the defendant successfully rebuts the presumption, the burden

20  returns to the government under the *Boyd* case out of this

21  district in 2007.

22          Even if the defendant bears his burden, the

23  presumption remains a fact in deciding whether to detain a

24  defendant because it reflects Congress's substantive judgment

25  that particular classes of offenders should be detained prior

United States v. Meek

38

1   to trial.  That was articulated in *United States v. King* and

2   several other cases in sister jurisdictions of this court.

3        If the burden returns to the government, they bear

4   different burdens with respect to the dangerousness and risk

5   of flight.  The government must prove by clear and convincing

6   evidence that no condition or combination of conditions will

7   reasonably assure the safety of any other persons and the

8   defendant.

9        The Court takes a look at under 3142(g) the nature

10  and circumstances of the offense, including whether the

11  offense involves a minor victim, the weight of the evidence

12  against the person, the history and characteristics of the

13  person, including the person's character, physical and mental

14  condition, family ties, employment, financial resources,

15  length of residence in the community, community ties, past

16  conduct, history relating to drug or alcohol abuse, criminal

17  history, and records concerning appearances at court

18  proceedings.

19       The nature and seriousness of the danger to any

20  person to the community that would be posed by the person's

21  release is tantamount under 3142(g)(4).

22       In the hearing before Judge Vaala, defense counsel

23  identified four cases where the magistrate released a

24  defendant charged with an offense involving a minor.  In the

25  *United States v. Delgado*, which is distinguishable, there was

─United States v. Meek─

1  a single victim who knew the defendant.  The primary

2  consideration in that case was the safety of the single minor

3  who the defendant was barred from contacting.  That is not the

4  case here with multiple victims spread out across the United

5  States and potentially beyond.

6         The *United States v. Moser* case, which is cited, the

7  defendant in that case occurred in 2008 when the state of the

8  internet was much different.  Instagram, SnapChat, and Omegle,

9  which the defendant purportedly or allegedly used to contact

10  his victims, were not even created at that time.

11         *United States v. Sims*, there's some also

12  distinguishing characteristics.  There was no evidence of

13  actual communication between the defendant and the minor

14  victims at the time, only communication with an undercover

15  agent.  The defendant and Sims did not pose to be someone

16  else.  Apparently and allegedly this defendant has apparently

17  impersonated teenage girls and engaging in grooming activity.

18         Also, the defendant and Sims only used one messaging

19  service to contact minors indicating a relatively

20  unsophisticated method of contacting minors.  That is

21  juxtaposed with the instant case where the defendant has

22  allegedly used multiple avenues to contact minors, including a

23  level of sophistication as not of the same as in Sims.

24         And finally, the *United States v. Cheves*, the

25  distinguishing characteristics on possibly two victims who

United States v. Meek

40

1   lived outside of the United States and the chief concern there

2   was for the safety of the -- of the victims in that case.  And

3   there was no indication that China was going to be an avenue

4   or venue where it could be implicated in the defendant's

5   conduct.

6           Ultimately, in deciding this case the Court looks at

7   the following factors:

8           Obviously, the Court has the authority to revoke the

9   order of release, and there's a rebuttable presumption of

10  detention that exists.  The egregious nature of the alleged

11  offense, the ample evidence in this case at this point, the

12  defendant's lengthy pattern of engaging in conduct and the

13  danger he poses to the community weigh strongly in favor of

14  detention.

15          Nature and circumstances suggest that the defendant

16  is currently charged with transportation of child pornography.

17  The affidavit reveals that his offense conduct is much more

18  extensive.  The transportation events itself involves the

19  distribution and receipt of child pornography with individuals

20  that the defendant apparently sought out online for the

21  purpose of discussing violent sexual fantasies about child

22  abuse and exchanging information.

23          The defendant was at least a member of one community

24  dedicated to the exchange of this information and it is

25  alleged that he actively contributed to the group.  Even more

─────United States v. Meek─────

41

1  concerning, the defendant has a history and pattern of

2  allegedly engaging in and trying to engage in sexual conduct

3  and conversation with minors online.  For example, a minor

4  victim told law enforcement that the defendant pressured her

5  to send pictures depicting sexual explicit conduct.  Law

6  enforcement is alleged to have found 11 images of this minor

7  on the defendant's phone, including nude images with her

8  breasts and pubic region exposed.

9          Law enforcement also located the chat, allegedly,

10  between the defendant and the minor in which he manipulated

11  her by offering access to the public figure he knew she,

12  quote, loved most in the world.

13          In other instances, the defendant concealed his

14  identity allegedly while he engaged in these online exploits

15  with minors.  Allegedly, he even posed as an adolescent girl

16  using that person to engage in sexual conversations with other

17  young girls.

18          The defendant's interests are broad.  The evidence

19  reveals, allegedly, a man interested in trading images

20  depicting everything from the rape of infants to the bondage

21  of S&M treatment of prepubescent boys, to the sexual

22  exploitation of late adolescents.

23          The government alleges that his conduct spans

24  multiple platforms and years.  His devices, allegedly,

25  contained conversation with minors on SnapChat, Instagram, and

United States v. Meek

42

1   other devices.

2        Of course, the defendant does not just view

3   the information, allegedly distributed.  As courts have

4   regularly recognized "such images are permanent records of the

5   child's participation and the harm to the child is exacerbated

6   by the circulation.  *United States v. Burgess* recognize that

7   Fourth Circuit case in 2012.

8        These children who "must live with the knowledge

9   that adults like the defendant can pull out a picture or watch

10  a video that has recorded the abuse of them at any time,

11  suffer direct and primary emotional harm when another person

12  possesses, receives or distributes the material."

13       The weight of the evidence, as it is at this stage,

14  is compelling.  The messages and images were located and on

15  devices throughout the defendant's home where he lived alone.

16  At this point, the devices contained numerous indications that

17  they belonged to him, including his personal accounts and

18  data.  They had been used to engage in illegal activities in

19  close proximity when he had used them for other business and

20  personal affairs.

21       As Judge Vaala stated, this case is difficult.  It

22  is compelling because this man has done a lot of things which

23  have contributed significantly to the public good.  He has

24  done a lot of great things, allowing families to get closure

25  on, things that were very important to them in their lives,

─────────────────── United States v. Meek ───────────────────

43

1  but this has to be considered in balance, more particularly,

2  with the nature of the offense and the circumstances which the

3  government alleges to have been able -- alleges they are able

4  to prove in the context of this case.

5         So the Court in this matter is going to order that

6  Mr. Meek remain detained.  All right.

7         Mr. Meek, I'll say this to you, sir, you have an

8  excellent lawyer.  Mr. Gorokhov's reputation with me is

9  outstanding.  We have done cases in the three years that I

10 have been here and he is an excellent advocate.  He works hard

11 for his clients.  So let me encourage you to work with him as

12 best you can to allow yourself to be put in the best position

13 that you can, sir.  I know you're disappointed, but I'm sure

14 you understand the analysis that the Court had to go through.

15        Anything else from the government?

16        MS. BEDELL:  No, Your Honor.  Thank you.

17        THE COURT:  All right.  Where are we as far as

18 getting this case ready for some sort of disposition?  Where

19 are we?

20        MS. BEDELL:  Your Honor, that's something we have

21 discussed with defense counsel.  I don't think we're in a

22 position to talk about a resolution at this point, but we

23 expect to be here hopefully in the next week or two.

24        THE COURT:  Okay.  I will tell you a concern about

25 this, I don't want this case to sort of just sit and wait.  I

─────────────────── Tonia M. Harris OCR-USDC/EDVA 703-646-1438 ───────────────────

EASTERN DISTRICT OF VIRGINIA

—United States v. Meek—

44

1    want it to move.  Obviously, in making a determination that

2    Mr. Meek should be detained, it sort of ups the ante as far as

3    the government's obligation to move this case along.  So let's

4    do all that we can to make sure that we get this case on the

5    docket and expeditiously considered.

6              MS. BEDELL:  Absolutely, Your Honor.  Thank you.

7              THE COURT:  Thank you.  We're done.

8

9              **(Proceedings adjourned at 12:57 p.m.)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─────United States v. Meek─────

45

1                    CERTIFICATE OF REPORTER

2

3            I, Tonia Harris, an Official Court Reporter for the

4    Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Final pretrial

7    conference the case of the **UNITED STATES OF AMERICA versus**

8    **JORDAN GORDON MEEK,** Criminal Action No.: 1:23-mj-32, in said

9    court on the 6th day of February, 2023.

10           I further certify that the foregoing 45 pages

11   constitute the official transcript of said proceedings.

12           In witness whereof, I have hereto subscribed my

13   name, this February 9, 2023.

14

15

16

17

18

19

20

21                _____/s/_____
                  Tonia M. Harris, RPR
22                Official Court Reporter

23

24

25

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

EASTERN DISTRICT OF VIRGINIA