

1424 K Street NW, Ste 500, Washington DC 20005
Telephone: 202-386-6920 Facsimile: 202-765-2173

Eugene Gorokhov, Esq.
eugene@burnhamgorokhov.com
*Licensed to practice in Virginia and the District of Columbia*

March 31, 2022

AUSA Zoe Bedell
AUSA Whitney Kramer
2100 Jamieson Ave.
Alexandria, VA 22314

Re: *US v. Meek, 1:23cr65-CMH—Discovery Requests.*

Dear Ms. Bedell,

I write in response to your March 16, 2023 letter. As discussed below, it is our position that the government's discovery obligations have not been met at this time. We therefore ask you to produce to the defense the materials discussed in this letter.

**Virginia State Police and Arlington County Police Records**

In your letter, you state that you are working to provide material from Virginia State Police and Arlington County Police. That you for continuing to seek all records from these entities.

The email chain provided in your March 16, 2023 letter, which appears to be an attachment to report 305A-WF-3492432_0000157, is a September 9, 2021 email communication between the FBI and Arlington Police regarding whether minors reside at Mr. Meek's apartment. However, as noted in other FBI documents, the FBI received a referral from Arlington County Police prior to this, on September 7, 2023. *See, e.g.*, US-00000845 (referring to a tip sent from Arlington Police to the FBI). We have received no documentation pertaining to this referral, or any other Arlington County Police activity relating to this investigation.

Furthermore, while we are in receipt of the Virginia State Police materials you provided previously, it is apparent that the production is not complete with respect to the Virginia State Police. For example, while it is clear that Virginia State Police investigated this matter, there is no documentation as to how this matter went from the Virginia State Police to the Arlington County Police Department, or ultimately to the FBI. Moreover, as noted above, it is not clear what investigation Arlington County Police conducted, if any.

Additionally, the NCMEC report relating to the March 11, 2021 tip notes that the matter was referred from NCMEC to the Virginia State Police. US-0000857. However, the documents provided by the government from Virginia State Police do not include a copy of a report or

1

communication sent by NCMEC to the Virginia State Police, nor a record of the transmittal of any files from NCMEC.

More generally, the only documents between March 11, 2021 and September 7, 2021,[1] are subpoenas by Virginia State Police, including one with an apparent Arlington County state court case number, CT87555105, in connection with the subpoena to Verizon. However, multiple FBI documents refer to Arlington County Police Department as the referring agency, without mention of the Virginia State Police.

The foregoing materials are within the government's possession and must be produced. A document or object is deemed within the government's possession, custody, or control if a federal or local law enforcement agency that participated in the investigation possessed or controlled it. *See United States v. Scott*, 2006 U.S. Dist. LEXIS 30510 at * 9, No. RDB 05-0550 (D. Md. May 4, 2006) (finding a letter possessed by the Baltimore City Police Department to be within the "government's possession, custody or control" based on the close working relationship between the Baltimore City Police Department and the federal government in this case); *United States v. Jordan*, 316 F.3d 1215, 1249-50 (11th Cir. 2003)("courts have found that the 'possession, custody, or control of the government' requirement includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor."); *United v. Safavian*, 233 F.R.D. 12, 14 (D.D.C. 2005) ("In the Court's view, 'the government' includes any and all agencies and departments of the Executive Branch of the government and their subdivisions.").

Please note that Rule 16(a)(1)(E), in contrast to other provisions of Rule 16, does not contain a clause conditioning the government's disclosure obligation upon the knowledge of the government prosecutor. *See United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985) (noting that the plain language contains no due diligence component and that the disclosure obligation is triggered upon the federal government's "actual possession, custody, or control" of a document.). Thus, whether government counsel is personally aware of information is irrelevant to an analysis of whether the government, as a party, has violated Rule 16.

**Access to Seized Evidence**

During our evidence review at the FBI on March 16, 2023, we were not able to review the contents of the laptop seized from Mr. Meek (item 1B4). Three of the data volumes appeared to still be encrypted. Our expert asked CART Gabriela Mancini about this issue, and Ms. Mancini explained that the laptop had not been "processed." We noted that the government stated in the Complaint affidavit that the FBI recovered 90 CSAM items from the laptop. It is unclear how this was done without processing the laptop. Ms. Mancini said she would follow up with clarification or have an agent follow up, but we have received no further information on this issue. Because we cannot access and review this evidence, it has not been produced in

---

[1] We are in receipt of the handwritten notes of the interview of Mr. Meek's daughter by an interviewer working for Arlington County, as well as an Arlington County Detective. However, these materials post-date the September 7, 2021 date on which the FBI has stated that this matter was referred.

accordance with the government's discovery obligations under Fed. R. Crim. P. 16(a)(1)(E). The non-production issue is not limited to Rule 16, but also implicates *Brady* information. A party may suppress information not only by withholding it but by producing it in a manner that precludes the defense from finding it in time to utilize it. *Brady* requires not only that a defendant learn of the evidence but that he do so "in time to *reasonably and effectively* use it at trial." *United States v. Jeffers*, 570 F.3d 557, 573 (4th Cir. 2009) (emphasis added) (citing *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985).

Furthermore, it is my understanding that the government seized a total of four laptop computers. Can you please confirm that 1B4 is a MacBook laptop, and the status of the other seized laptop computers?

In addition to our inability to review item 1B4, we were informed during our visit on March 16, 2023 that the iCloud data had not been processed. Yet, the Complaint Affidavit refers to items from the iCloud account. *See, e.g.*, Complaint Affidavit ¶ 25. This data therefore presents the same issues as the laptop described above.

**Missing Documentation Relating to Searches of Seized Devices**

The government has not provided the defense with any records—including but not limited to handwritten notes, reports, or logs—documenting the government's search of Mr. Meek's devices, including but not limited to documentation of the unlock and processing steps for each device. For example, relating to the above laptop, there is no record of how the FBI located the alleged 90 CSAM items from the seized laptop. *See* Complaint Affidavit ¶ 54. And although other seized devices appear to have been processed for review, there is similarly no record of how or where the FBI located CSAM materials as agents or technicians reviewed the devices. This is true both of the review as relates to the materials described in the Complaint Affidavit, but also in the investigation more generally. Accordingly, we ask that the government produce such records to the defense.

If the FBI did not keep contemporaneous records of its review of the seized devices, please so state.

We also request all chain of custody logs pertaining to the seized electronic devices, to the extent they have not yet been provided.

**Additional Information Needed for Meaningful Discovery Review**

In addition to all records pertaining to the FBI's review of devices seized, please produce a file listing that provides the following information: A List of all items alleged to be child pornography (from any source devices, collections, or returns), including the file path, filename, hash values, file properties, and internal metadata (such as EXIF data) for each item alleged to be CSAM. Additionally, as to these items, we ask that the government provide a designation of which are from known series, CVIP collections, or have already been proven to be child pornography in past cases.

3

In the meantime, or as part of the requested file listing, we ask that you provide the following information relating to the allegations of the Complaint Affidavit:

- Details relating to the images/videos in Complaint Affidavit ¶ 54, including where were the images/videos found on the seized devices? Further, please provide details of the still image of a video that the agent "knows to be part of a series of child pornography images and videos known to law enforcement and contained in a NCMEC database of identified children." Specifically, which known series is this item a part of?

- Does Complaint Affidavit ¶ 29 relate to details of the image described in Complaint Affidavit ¶ 28? Or the screenshot containing this image? If so, please state where this image was found on Meek's devices, and where the "creation date" referred to came from.

- Please identify any files/records that show where IDENTIFIED MINOR 2 provided her age or stated that she was a minor to the user of Mr. Meek's device(s) in 2020.

- Please provide the EXIF metadata and file properties for the photos referenced in Complaint Affidavit ¶¶ 33-34, as well as the name and path of additional images mentioned in ¶ 34.

- Please provide the filename and path for images referenced in ¶ 52.

- Filenames and paths for images and videos referenced in ¶ 55.

- Please identify where IMG_9205.PNG, referenced in ¶ 57, was located.

- Please provide the name and file path for each of the 34 alleged images and videos in ¶ 57.

- Please provide a list of the file name and file path of the files exchanged in conversations with USERNAME 1, 2 and 3, as well as any other person, that contain alleged child pornography;

As you know, the Complaint Affidavit and other affidavits refer to a limited number of items by file name. But this is true only of a small subset of the number of CSAM items that the government claims to have identified on the seized devices. Without the requested information, it is impossible efficiently to review the seized devices or independently verify the presence of the CSAM on these devices, which are all necessary steps to determining potential defenses to the charges.

**Use of Undercover Operators or Other Cooperating Witnesses**

Please disclose if any of the individuals that Mr. Meek is alleged to have interacted with, including but not limited to USERNAME 1, USERNAME 3, and USERNAME 3 was an undercover operator. As used in this paragraph, the term undercover operator would include an individual employed by or under the control of the government or any other law enforcement agency, including a foreign law enforcement agency, or an individual not under the control of

such an agency who is nevertheless assisting the government, regardless of whether such individual was compensated or uncompensated.

**Communications, Documents and Information from Dropbox**

Please provide us with information and documents relating to Dropbox's activities in relation to the account associated with meekwire@gmail.com, and Dropbox's communications with NCMEC and any law enforcement agency involved in this case. This information should include, but is not limited to, the following:

- What prompted the search, on March 10, 2021, for CSAM on the Dropbox account associated with ███████████;

- All communications between NCMEC and Dropbox that have not yet been produced;

- All communications between Dropbox and any law enforcement agency that have not yet been produced, including but not limited to communications that occurred prior September 7, 2021, and including the period prior to March 11, 2021. This should include all communications with any employee of Dropbox regarding the search of the account associated with ████@█████, and review of the alleged CSAM found in the account;

- Any additional information that has been collected or received from Dropbox by the FBI, Virginia State Police, Arlington County Police, or any other law enforcement agency;

- All information regarding how Dropbox discovered the alleged CSAM materials on the account associated with ████@█████ This should include the process by which Dropbox located the five alleged CSAM items on March 10, 2021, as well as what prompted the search of the Dropbox account. Specifically, the April 22, 2022 affidavit in support of the search warrant for Mr. Meek's residence notes that "Dropbox filed a CyberTip with the National Center for Missing and Exploited Children (NCMEC) regarding child pornography found in a Dropbox account on March 10, 2021." To date, we have received no information regarding how these files were discovered on the account.

- The identity of any and all Dropbox employee(s) who reviewed the Dropbox account associated with ████@█████ in relation to the March 11, 2021 tip to NCMEC;

- The NCMEC report notes that Dropbox provided "metadata" associated with the six files to NCMEC. US-00000851-52. Does this refer to the information in US-00000858? If additional metadata was provided by Dropbox to NCMEC, please provide a copy of this metadata, and all records reflecting its transmission from Dropbox to NCMEC;

- The NCMEC report reflects that NCMEC reviewed two of the files flagged by Dropbox, US-00000855, but there is no record reflecting Dropbox's transmittal of these files to NCMEC. Please provide any records reflecting whether or not these files were in fact

    transmitted to NCMEC, or any information regarding this issue if it was not reduced to writing;

- Similarly, the affidavit in support of the search of Mr. Meek's residence also notes that the "affiant has viewed the 5 videos of child pornography that were reported and viewed by Dropbox in March 2021, and the videos all appear to depict minors engaged in sexually explicit conduct," and then goes on to describe the videos. April 22, 2022 Affidavit at 9-10. However, it is not clear where these videos were obtained by the FBI, nor is there a record of how or when the FBI obtained these videos. Please provide all information and documentation pertaining to this issue.

**Filter Team Memoranda**

You note in your letter that you will not produce the filter team memoranda dated November 24, 2021 and April 22, 2022. You claim that these memoranda are attorney-client privileged and attorney work product, and further that these materials vest no rights and are not related to suppression. We disagree, and ask that you produce the memoranda forthwith.

As you are no doubt aware, much of Mr. Meek's investigative reporting is focused on the work of the Department of Justice and the FBI, as well as other law enforcement agencies. To the extent that the filter memoranda allowed employees of these agencies to rummage through Mr. Meek's First Amendment-protected work product and other materials, including information that would divulge sources, the First and Fourth Amendment implications could be significant.

There is recent law from the Fourth Circuit on the issue of the DOJ's filter procedures relating to privileged materials. *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 164 (4th Cir. 2019), *as amended* (Oct. 31, 2019). Even where a magistrate judge signed off on the procedures, the Fourth Circuit found that the procedures provided inadequate protection to materials covered by attorney-client privilege and work product by allowing federal agents and prosecutors to rummage through an attorney's email files and to make decisions about was privileged and what was not. *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 179 (4th Cir. 2019), *as amended* (Oct. 31, 2019). These memoranda and the procedures they set forth are directly relevant to suppression issues. Even if the filter memoranda set forth an acceptable procedure to protect First Amendment-privileged information, there is also a question as to whether the procedures were actually followed in the execution of the search. Neither question can be answered without the filter team memoranda.

As noted in my prior letter, *Brady* is applicable to issues relating to suppression. *See, e.g., United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (*Brady* violated in pretrial context by suppression of report that would have demonstrated that defendants had Fourth Amendment standing to challenge search). We therefore ask that you produce the filter memoranda to the defense.

**Outstanding Responses from NCMEC**

Your recent discovery production contains a February 15, 2023 request by the FBI to NCMEC to conduct an image comparison for batches of images from five devices. (Beginning Bates

Number US-00002368). Please provide any response the government has received from NCMEC.

### Documentation of DOJ Approval of Warrants and Other Investigative Steps

Please provide any and all information pertinent to requests to, and approvals by, senior DOJ officials in connection with any and all search warrant applications in this case or any other investigative steps in this case. Publicly available sources indicate that a Deputy Assistant Attorney General authorized your office to apply for a warrant to search at least one of Mr. Meek's accounts. Yet, we have received no documentation of such a request, or its approval.

### Documentation and Information Relating to Leak Investigation

As we have previously discussed, and as you know from media reporting and other sources,[2] an individual with intimate knowledge of the investigation of Mr. Meek leaked information to the news media and others regarding the investigation. Please provide all documentation pertaining to the DOJ's investigation into this issue, and any pertinent information to the extent that it was not documented. *See, e.g., United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (recognizing that *Brady* information must be disclosed regardless of whether it was written down).

We make this request pursuant to *Brady*, which requires disclosure of information relating to an individual's bias against the defendant. Favorable evidence may include exculpatory as well as impeaching evidence, and evidence used to "attack ... the good faith of the investigation." *Kyles v. Whitley*, 514 U.S. 419, 445 (1995); *See also* Justice Manual 9.5-100 (requiring the government to search for and produce all information relating to the potential bias of a government employee who was involved in the investigation).

### Other Missing Documents

The discovery materials provided to date show that investigating agents had detailed information regarding Mr. Meek's professional activities prior to their execution of the search warrant. For example, a report prepared by agents regarding the non-custodial interview of Mr. Meek notes that Mr. Meek "co-wrote [a book] that tells a story of his involvement in assisting Afghani [sic] nationals." US-00001344. Furthermore, in another report, it is noted that Mr. Meek was at the United States Courthouse throughout April 2021 covering the "ISIS Beatles" trial. US-

---

[2] *Compare* Rolling Stone Magazine, FBI Raids ABC Star News Produce's Home (Oct. 24, 2022)(https://www.rollingstone.com/politics/politics-features/fbi-raid-abc-news_producer-1234613619/) (noting that the government was investigating Mr. Meek's possession of classified documents) with US-00001287-89 (April 28, 2022 FBI email chain indicating that Mr. Meek "may be in possession of classified documents"). See also tweet from Marjorie Taylor Greene prior to Mr. Meek's arrest, noting that "Sources say James Gordon Meek may have had child pornography on his laptop."
https://twitter.com/RepMTG/status/1582845216419352576?s=20&t=YRZHfPO-ZcVHJW_qYsn9fA (October 19, 2022).

00001257. Yet, there are no reports provided pertaining to the FBI's investigation into these activities.

Additionally, there is a report relating to the plan for Mr. Meek's arrest, which reflects that he would be allowed to self-surrender at the US Courthouse. However, there is no documentation reflecting the subsequent decision to arrest Mr. Meek without notice.

\*\*\*

Thank you for your attention to these matters. Please feel free to reach out if it would be helpful to discuss further.

Sincerely,

Burnham & Gorokhov, PLLC

By: Eugene Gorokhov