IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES GORDON MEEK<br><br>*Defendant*. | Case No. 1:23-cr-65 |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

The defendant moves this court to compel the production of information that does not exist and to which he has no entitlement. His attempts to treat *Brady v. Maryland* as a tool to enable his personal fishing expedition are barred by law and must be rejected. The motion to compel should be denied.

### RELEVANT BACKGROUND

The investigation into the defendant's criminal conduct originated with a CyberTip submitted by Dropbox to the National Center for Missing and Exploited Children (NCMEC). This CyberTip indicated that Dropbox had detected child sexual abuse material (CSAM) in the defendant's Dropbox account. NCMEC originally forwarded the CyberTip to the Virginia State Police (VSP). As the records already produced in this case indicate, VSP issued minimal legal process to identify the Dropbox account subscriber. That investigation identified the defendant and determined that he resided in Arlington County, meaning the case was referred to Arlington County Police Department (ACPD). Shortly thereafter, without taking additional investigative steps, ACPD referred the case to the Federal Bureau of Investigation (FBI).

The FBI conducted a thorough investigation, including executing a search pursuant to a warrant of the defendant's residence, where the government seized numerous electronic devices. A search of those devices revealed numerous images and videos of CSAM, as well as several instances of the defendant sending and receiving CSAM. Additional investigation revealed that while the defendant was not in the Eastern District of Virginia during some of the instances when he sent and received child pornography, he traveled back to the district shortly thereafter with CSAM on his phone. The defendant has been charged with one count of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1); one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

## ARGUMENT

A.  **The government has produced all information in its possession, custody, or control relating to Dropbox.**

As the government accurately informed the defendant in its letters dated March 16 and April 7, 2023, the government has produced all information it has received from, or otherwise related to, Dropbox, including records reflecting that Dropbox viewed the CSAM before reporting the matter to NCMEC. In keeping with its discovery obligations, if the government were to receive anything additional and discoverable, it would produce those materials. Similarly, as the government represented in its letter dated March 16, 2023, the government has complied with its obligations under *Brady v. Maryland* and *Giglio v. United States* by producing, making available, or otherwise informing the defendant of all *Brady* and *Giglio* information of which it is currently aware. The government also committed to promptly provide any additional information it received or learned. These representations included any and all records or information relating to the

2

defendant's Dropbox account. The government did not disclose that law enforcement was involved in the Dropbox search because law enforcement was not involved.

Moreover, even though the VSP and ACPD are not members of the government's prosecution team, the government nonetheless requested that those agencies search their records and provide any information related to this case.[1] As the government stated in its letter dated April 7, 2023, those agencies provided all materials they had relating to the defendant's case, and those materials have all been provided to the defense, including any materials relating to the defendant's Dropbox account.

---

[1] While VSP and ACPD had minimal involvement in this investigation prior to referring it to the FBI, they were not working with the federal government or otherwise functioning as part of the federal government's prosecution team. The prosecution is not required to disclose evidence not in its possession or control from investigations by other law enforcement agencies when the agencies did not work together on the investigation or the prosecution and when the prosecution thus had no control over the agency officials who physically possessed the documents. *See, e.g., United States v. Pearson*, 1:15-cr-193, 2016 WL 7647523, at *3 (E.D. Va. Aug. 11, 2016) (Ellis, J.) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (emphasis added) (*Brady* obligation "extends only to what is known 'to others acting *on the government's behalf in the case*'"); *United States v. Indivior Inc.*, No. 1:19CR00016, 2019 WL 7116364, at *3 (W.D. Va. Dec. 23, 2019) (quoting *Kyles*, 514 U.S. at 437) (same); *see also United States v. Pelullo*, 399 F.3d 197, 216–18 (3d Cir. 2005), as amended (Mar. 8, 2005) (holding that another agency was not a member of the prosecution team where they did not "engage[] in a joint investigation or otherwise share[] labor and resources"); *United States v. Casas*, 356 F.3d 104, 116 (1st Cir. 2004) (holding that the prosecution is not obligated to obtain evidence from another agency not under its supervision in the case); *United States v. Morris*, 80 F.3d 1151, 1169–70 (7th Cir. 1996) (same). VSP and ACPD—neither of which is a federal agency—carried out preliminary investigative actions pursuant to their own mission and general course of activity before transferring the case to the FBI. Therefore, VSP and ACPD were not under the direction of or apart of the prosecution team.
But even a conclusion that the state agencies were part of the prosecution team would not change the analysis—or the outcome—of this motion because those agencies have both searched their records and provided everything they have related to their investigation of this defendant. The government has subsequently provided all of that information to the defendant. There is nothing more to be done.

There is no additional information within the government's possession, custody, or control related to Dropbox to produce or provide. The defendant's motion to compel is frivolous and should be denied.

**B.    The government has produced all information from the Virginia State Police and Arlington County Police Department.**

As the government represented in its letters dated March 16 and April 7, the government asked both the VSP and ACPD to search their records and provide any materials they had relevant to this case. Both of those agencies complied, and the government produced everything it received. Again, there is no additional information to compel, and the motion should be denied.

The defendant points to the low number of documents from those agencies to claim that there must be more. But his speculative claim is not merely baseless, but actively contradicted by the record available to the defendant. The record reflects that after receiving the CyberTip, VSP issued legal process to identify the Dropbox account subscriber. That material has been produced, and it reflected that the subscriber—the defendant—resided in Arlington County, meaning the case was referred to ACPD. As the lack of produced material indicates, ACPD did not take additional investigative steps before the matter was referred to the FBI—a referral that the defendant acknowledges is referenced in the materials the government has provided. Moreover, the defendant has not identified any other specific documents that it would seek to compel the government to produce, much less how those items are material to preparing his defense. The government cannot produce materials that do not exist. *See, e.g., United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1181–82 (9th Cir. 2015) (citing *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995), Fed. R. Crim. P. 16(a)(1)(E)) (defendant was required to establish inference that materials existed because court cannot compel the government to produce materials that do not exist). The motion to compel should be denied.

**C.      The defendant has no right to the filter team memoranda or documents relating to any internal approvals of steps in the investigative process.**

The defendant has not established any entitlement to the internal memoranda he seeks, whether that is the memoranda providing guidance to the filter team or the internal records of requests to or approvals by senior Department of Justice officials in connection with search warrant applications in this case. His motion should be denied.

As an initial matter, the government's internal memoranda are expressly excluded from Rule 16 discovery. Rule 16(a)(2) provides:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, *memoranda, or other internal government documents made by an attorney for the government* or other government agent in connection with investigating or prosecuting the case.

(emphasis added). None of Rule 16(a)(1)(A)-(D), (F), or (G) apply to this request.

Nor are the materials discoverable pursuant to the government's obligations under *Brady*. First, he has offered nothing more than speculation that the documents contain the information he thinks they might. Second, he cannot establish that even if they did contain the information he hopes to find, that such information would be *Brady*. The Department's policies do not establish, create, or even codify any rights for the defendant, and the Fourth Circuit has stated that suppression is not available for any violation of the Department's news media policy. *In re Shain*, 978 F.2d 850, 853 (4th Cir. 1992). Thus, neither the policies nor their implementing materials are relevant to assessing the reasonableness of any searches for Fourth Amendment purposes.

As background, the Department of Justice has promulgated binding internal regulations relating to investigations concerning members of the news media and has provided additional

5

guidance on the implementation of those regulations. *See, e.g.,* 28 C.F.R. § 50.10 (Nov. 2022)[2]; Justice Manual 9-13.400; Memorandum from Attorney General dated July 19, 2021. These regulations impose some limitations on investigative techniques that may be used on members of the news media and create internal Department approval requirements before law enforcement may employ various investigative techniques in relation to members of the news media. The government has fully complied with all aspects of its own policy throughout the course of its investigation and prosecution.

The defendant's production demand fails at the first step because he offers no basis to believe the defendant's suggestions that materials exist that could indicate that the government has not complied with its policies, that anyone involved in the case had a supposedly impermissible motive in authorizing steps in the investigation, or that the materials he seeks in any way otherwise contain information he believes to be *Brady*. The defendant must "at least make[] some plausible showing that the particular information sought exists." *United States v. Caldwell*, 7 F.4th 191, 208 (4th Cir. 2021); *see also United States v. Ramos*, 27 F.3d 65, 71 (3d. Cir. 1994) (finding it "unwise to infer the existence of *Brady* material based upon speculation alone" and requiring the defendant to "raise at least a colorable claim" that the evidence sought contains *Brady* information); *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981) (same); *United States v. Pearson*, 1:15-cr-193, 2016 WL 7647523, at *2 (E.D. Va. Aug. 11, 2016) (Ellis, J.) ("Defendant's [*Brady*] motion must fail first because defendant has not in fact identified the existence of evidence favorable to his case."). Instead, the defendant is merely hoping that the requested materials reveal something he

---

[2] The Attorney General revised the news media regulation in November 2022. The specific changes to the regulation are not relevant here because neither version creates any rights for any defendant or member of the news media. Unless otherwise noted, citations to the regulation refer to the current version of the rule.

6

believes would be useful. But as the Fourth Circuit has noted, "*Brady* requests cannot be used as discovery devices." *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010). "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

The defendant's request also fails at the second step because the information he seeks, even if it existed, does not constitute *Brady* material: there is nothing the government could say about the filter or policy processes that could affect the suppression analysis, much less cast light on his innocence. Even if the government had not complied with its policies, those policies do not create any rights, much less a right enforceable through suppression. The policy is explicit that it "is not intended to, and *does not, create any right or benefit*, substantive or procedural, enforceable at law or equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." 28 C.F.R. § 50.10(t) (emphasis added). Moreover, the policy is clear from its opening paragraph that it "is not intended to shield from accountability members of the news media who are subjects or targets of a criminal investigation for conduct outside the scope of newsgathering." 28 C.F.R. § 50.10(a)(1); *see also* Justice Manual 9-13.400(A)(1.1) ("The policy is not intended to extend special protections to members of the news media who are the subject or targets of criminal investigations for conduct not based on, or within the scope of, newsgathering activities."). Instead, Department employees who fail to obtain any prior authorizations required by the policy face potential administrative disciplinary action. *See* 28 C.F.R. § 50.10(s). This repercussion is neither warranted in this situation, nor available as a remedy for a criminal defendant seeking to contest charges against him.

As a result, the Fourth Circuit has expressly found that the Department's news media policy "is of the kind to be enforced internally by a governmental department, and not by courts through

exclusion of evidence." *In re Shain*, 978 F.2d 850, 853 (4th Cir. 1992). That conclusion was based on the Supreme Court's holding in *United States v. Caceres* that a court need not "exclude evidence obtained in violation of an agency's regulations or rules where neither the Constitution nor statute require adoption of any particular procedures." *United States v. Williamston*, 14 F.3d 589 (Table), 1993 WL 527977, at *8 (4th Cir. 1993) (citing *United States v. Caceres*, 440 U.S. 741 (1979)); *see also In re Grand Jury Proceedings No. 92-4*, 42 F.3d 876, 880 (4th Cir. 1994).[3] The defendant has cited no law, statutory or otherwise, that required the Department to establish internal rules and regulations relating to investigations of members of the news media. That is because there is none. *See, e.g., In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1153 (D.C. Cir. 2006) (holding that the Department's news media guidelines were "not required by any constitutional or statutory provision" and "provide no enforceable rights to any individuals"); *In re Special Proceedings*, 373 F.3d 37, 44 n. 3 (1st Cir. 2004) (noting that news media guidelines do not create legally enforceable rights for any person). Because the Department's regulations are purely voluntary, suppression is not an available remedy for any violation of that regulation. As a result, even if the internal memoranda that the defendant seeks were to reveal non-compliance with the Department's own self-imposed internal regulations, the regulations are not statutorily or constitutionally required,

---

[3] Moreover, the *Caceres* Court recognized the dangers of creating a suppression remedy for violations of policies that did not have a constitutional or statutory basis. The Court acknowledged that application of the exclusionary rule to regulatory violations "could have a serious deterrent impact on the formulation of additional standards to govern prosecutorial and police procedures," potentially resulting in "fewer and less protective regulations." *Caceres*, 440 U.S. at 755–56. Moreover, such remedies would inappropriately "take away from the Executive Department the primary responsibility for fashioning the appropriate remedy for the violation of its regulations." *Id.* at 756; *see also Judith Miller*, 438 F.3d at 1153 ("It is well established that the exercise of prosecutorial discretion is at the very core of the executive function. Courts consistently hesitate to attempt a review of the executive's exercise of that function.").

and suppression would not be an available remedy. Thus, the materials are not discoverable pursuant to *Brady*.

The defendant further (and baselessly) suggests that any internal memoranda exchanged in the process of obtaining approvals might reveal some "unreasonable" government motivation in conducting the search that would warrant suppression. But each search in this case was authorized by a search warrant issued by a magistrate judge on the basis of an affidavit articulating probable cause (which search warrants have been produced to the defendant in discovery). The reasonableness of the searches, then, is determined through analysis of the affidavits and the attachments to the warrants defining what may be seized, as well as the government's actual conduct in the execution of the authorized search. *See, e.g., United States v. Phillips*, 588 F.3d 218, 223, 227 (4th Cir. 2009); *see also In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1300 (4th Cir. 1987) ("[T]he standard of probable cause is the same for a seizure in a first amendment context as in any other."). This information is all presently available to the defendant. Because any memoranda are irrelevant to the reasonableness analysis of any search, they are not discoverable under *Brady*.[4]

Contrary to the defendant's suggestion, *see* Mot. to Compel at 18, the possibility that an otherwise valid and lawful search *might* incidentally burden the defendant's news gathering activities does not entitle the defendant to special protections. As the Supreme Court stated in the

---

[4] Even if this Court were to believe that an attorney motivation of investigating the defendant's newsgathering activities constituted *Brady* information, the government submits the remedy would be ordering the government to disclose that information, not any memoranda themselves, given that any memoranda are attorney-client privileged and attorney work product. *See, e.g., United States v. Garcia-Martinez*, 730 F. App'x 665, 676–77 (10th Cir. 2018) (finding that defendant was not legally entitled to receive originals or raw data where summary disclosures provided the same substance). In any event, here, there would be nothing to disclose.

seminal case on the issue, "[i]t is clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability. Under prior cases, otherwise valid laws serving substantial public interests may be enforced against the press as against others, despite the possible burden that may be imposed." *Branzburg v. Hayes*, 408 U.S. 665, 682–83 (1972). The Fourth Circuit, following the Supreme Court's lead, has "declined to treat reporters differently from all other citizens" and refused to impose special standards or protections "simply because it is a reporter who is in possession of the evidence." *United States v. Sterling*, 724 F.3d 482, 493 (4th Cir. 2013). In short, the press "has no special immunity from the application of general laws." *Id.* at 683 (citation omitted). This principle is particularly applicable here, where any burden is only imposed as a result of *the defendant's own criminality*—had he not trafficked child sexual abuse material, the government would have no interest in searching his belongings in the first place.

The defendant has identified only one case suggesting that First Amendment considerations can factor into the reasonableness of a search, but that case is readily distinguishable. *See In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291 (4th Cir. 1987). In *Subpoena Duces Tecum*, the Fourth Circuit quashed a subpoena seeking to have two video distributors review potentially hundreds or thousands of videos to determine if they contained obscene material. But there, the subpoena directly targeted "material presumptively protected by the First Amendment." *Id.* at 1298. Here, the search warrants sought evidence relating to the crimes of trafficking of child sex abuse material, evidence that enjoys no constitutional protection. Similarly, the *Subpoena Duces Tecum* court emphasized that the "means of investigation intrude[d] on the first amendment rights of parties who have not been demonstrated to have acted illegally," *id.* at 1299—another

10

factor noticeably absent here. *Subpoena Duces Tecum* by no means establishes broader rights to irrelevant discovery simply because the defendant was a journalist.

The Court has recognized that it would be "frivolous" to assert—much less hold—that a reporter or his sources would have a "license . . . to violate valid criminal laws." *Branzburg*, 408 U.S. at 691. Yet that is exactly what the defendant seeks here—but in a context of a crime that has nothing to do with newsgathering, and where he himself is the criminal. The defendant's suggestion that he deserves extra protections and enjoys a broader right to suppression than any other criminal defendant is untenable and has been rejected by the Supreme Court and Fourth Circuit. The motion to compel should be denied.

**D.     The defendant is not entitled to documents and information relating to alleged press leaks in the defendant's case.**

The government is well aware of its obligation under *Brady* and *Giglio* to disclose impeachment information for a government witness, including evidence of bias. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). If the government were to learn that a witness in this case had provided information to the press about this case in contravention of Department policy not to disclose details of ongoing, non-public investigations, the government agrees to disclose that information, as it could potentially be impeaching under *Brady* and *Giglio* in some circumstances.[5] But as the government made clear in its letter dated March 16, 2023, the government has produced all *Brady* and *Giglio* information of which it is currently aware and will promptly make any newly discovered information available to the defense. There is no additional *Brady* or *Giglio* information to disclose—or compel.

---

[5] The defendant does not suggest this information is otherwise exculpatory, because it is not. Nor does the government agree that this information would be impeaching or represent bias in all circumstances.

11

The defendant's requests sweep well beyond his limited rights to *Brady* and *Giglio* material. The government has no general obligation to disclose the existence—or non-existence—of an investigation, much less *all* of the documents and information related to an investigation. This is particularly true when that hypothetical investigation would relate to a matter entirely outside of the scope of the charged criminal case and when the information sought has no bearing on the credibility of any government witnesses. The defendant cites nothing suggesting otherwise, nor does he attempt to explain how production of all documents relating to an entirely separate investigation would be required under any discovery obligation.[6] The defendant similarly offers no explanation of how information about "the identity of the individual(s) who leaked confidential information" regarding the defendant's case, Mot. to Compel at 19, relates to any of the government's discovery obligations, beyond a scenario addressed above where the individual in question was a witness in the government's case. The defendant once again impermissibly tries to use *Brady* to seek broad, general discovery unrelated to any of the government's actual obligations.

Nor is the non-existence of an investigation material or discoverable information. The government is "not required to create evidence that might be helpful to the defense" and thus has no obligation to initiate an investigation on the theory that it *might* lead to *Brady* or *Giglio* information about a witness in its case. *Werth v. United States*, 493 Fed. App'x 361, 366 (4th Cir. 2012); *see also United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) (rejecting argument that the government "has a duty not merely to disclose but also to create truthful exculpatory evidence"). Moreover, given the multitude of variables that go into case-opening decisions—an act that "is at the very core of the executive function"—the decision whether to initiate an

---

[6] In fact, disclosure of such an investigation and associated documents could violate Federal Rule of Criminal Procedure 6(e).

investigation does not itself reflect any bias on the part of the decisionmaker. *Judith Miller*, 438 F.3d at 1153. Had the defendant remotely demonstrated the involvement in the investigation or prosecution of any person harboring a bias against the defendant, the government would disclose that information. But the defendant's much broader demand for information is untethered to any discovery obligation and must be denied.

## **CONCLUSION**

The government has produced, made available, or otherwise provided all information in its possession, custody, or control that is responsive to its discovery obligations. For the reasons stated above, the defendant's motion to compel additional production of materials should be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Zoe Bedell
Assistant United States Attorney
Whitney Kramer
Special Assistant United States Attorney (LT)
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, Virginia 22314
Phone: 703-299-3700
Email: Zoe.Bedell@usdoj.gov