IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:23-CR-65 |
| | ) | |
| JAMES GORDON MEEK, | ) | Hon. Claude M. Hilton |
| | ) | |
| *Defendant*. | ) | Sentencing: September 29, 2023 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The defendant transported, distributed, received, and possessed child sexual abuse material (CSAM), including images of infants and toddlers and content depicting sadistic and masochistic abuse of prepubescent children. He sought out individuals and groups on the internet specifically for facilitating this conduct. Moreover, the evidence makes clear that the defendant sought out minors online for sexual purposes, including by posing as a minor himself.

The applicable guidelines range has been correctly calculated in the Presentence Investigation Report (PSR) as being between 151 to 188 months. The government recommends that the Court impose a sentence of incarceration within the guidelines range.

**BACKGROUND**

**I.    The defendant's transportation, distribution, and receipt of CSAM**

The defendant met numerous individuals online for the purposes of exchanging child pornography. For example, while on a trip to North and South Carolina in February 2020, the defendant engaged with two different individuals using the Kik messaging app. Both conversations started similarly—they exchanged basic information, and then the defendant got right to the point: "Love kids?" ECF No. 89, PSR, ¶¶ 32, 35. Once he had established that everyone was there for

1

the same reasons, the defendant would ramp up the conversation by sending images of his genitalia and child erotica, as well as sharing his fantasies about raping infants, toddlers, and prepubescent children. *See id.* ¶¶ 32, 35, 36. After receiving positive feedback, the defendant would then send images of CSAM, including a video lasting over a minute depicting an erect penis penetrating the anus of a female infant while the baby screams. *Id.* ¶¶ 18, 34, 36. The defendant also solicited and received CSAM from both individuals. *Id.* ¶¶ 32, 35. The defendant transported all of these CSAM images back to the Eastern District of Virginia when he returned home at the end of February 2020; the images and chats remained on his phone at the time of the search more than two years later. *Id.* ¶¶ 20-21, 31.

The defendant also distributed CSAM to members of a Telegram chat group called "Cocks, Cunts, and Kids." *See* PSR ¶ 45. Another member of the group had complained that the group was not sharing videos and photos anymore. *Id.* ¶ 46. The defendant sought to remedy the problem, sending at least one video, the visible frame of which depicted a young girl performing or about to perform oral sex. *Id.* Law enforcement also located other evidence of the defendant using Telegram to distribute images and videos depicting CSAM, including a still image from a video that is a minute and a half in length from a series of child pornography images and videos known to law enforcement. *Id.* ¶¶ 50-51.

II. **The defendant's online engagement with minors**

Forensic review of the defendant's devices revealed that he also repeatedly engaged directly with minors online, including sexually and while pretending to be a minor himself. For example, law enforcement located chats between the defendant and Identified Minor 2 in which the defendant used the minor's affection for a particular public figure to induce Identified Minor 2

2

to continue to engage with him. PSR ¶ 54. The defendant's phone also contained at least a dozen screenshots of images of Identified Minor 2 exposing her breasts and pubic area. *Id.* ¶¶ 55-56.

The defendant also met minors online using a website called Omegle, which allows a user to be randomly matched with others—including likely minors—for anonymous text and video communications. *Id.* ¶ 59. The defendant's phone contained screenshots of a chat between the defendant and an individual identifying as 14 years old, and an individual identifying as 15 years old whose naked breasts were exposed. *Id.* ¶ 60. In both chats, the defendant's video shows him naked and holding his penis in his hand. *Id.*

The defendant's devices contained additional screenshots indicating he engaged online with minors directly. For example, the defendant appears to have posed as a minor female on Instagram in order to persuade at least one other minor female to send him images of her breasts and her genitals. *Id.* ¶ 63.

### III. The defendant's possession of additional CSAM

The defendant also possessed numerous devices containing scores of CSAM images and videos. *See* PSR ¶¶ 24, 65. This content included multiple images and videos depicting prepubescent minors and minors under the age of 12, including such minors in sadistic and masochistic situations. *Id.* ¶ 24. For example, one image depicted a nude prepubescent boy with a strap around his face with a device forcing his mouth open; his hands are bound to his feet. The boy is wearing a 'Santa Claus' style hat with a bow pictured around his waist above his penis. *Id.*

### IV. Procedural History

On March 30, 2023, a federal grand jury in the Eastern District of Virginia returned a three-count Indictment charging the defendant with one count of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1) (Count 1); one count of distribution of child

3

pornography, in violation of 18 § 2252(a)(2) and (b)(1) (Count 2); and one count of possession of child pornography, in violation of 18 U.S.C. § 2552(a)(4)(B) and (b)(2) (Count 3). PSR ¶ 1. On July 21, 2023, the defendant pleaded guilty to Counts 1 and 3 of the Indictment.

## SENTENCING ANALYSIS

I.  **Statutory Penalties and Guidelines Calculations**

As this Court is aware, to determine the appropriate sentence, the Court must consult both the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). Here, the PSR correctly calculated the total offense level for the defendant under the Guidelines as follows:

| Guideline(s) | Description | Offense Level |
| --- | --- | --- |
| 2G2.2(a)(2) | Base offense level | 22 |
| 2G2.2(b)(2) | Material involved a prepubescent minor or a minor who had not attained the age of 12 years | 2 |
| 2G2.2(b)(3)(F) | Defendant knowingly engaged in distribution | 2 |
| 2G2.2(b)(4) | Offense involves material that portrays sexual abuse or exploitation of an infant or toddler | 4 |
| 2G2.2(b)(6) | Offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material | 2 |
| 2G2.2(b)(7) | Offense involved 600 or more images | 5 |

The defendant has demonstrated acceptance of responsibility for the offense, and the government therefore moves for an additional one-level decrease in the defendant's offense level, pursuant to Section 3E1.1(b), in addition to the two-level decrease for acceptance of responsibility pursuant to Section 3E1.1(a). In accordance with the PSR and the Guidelines, the defendant's total offense level is thus properly calculated as a 34. The defendant's criminal history category is correctly calculated in the PSR at I. The Guidelines range applicable to the defendant's offenses is therefore 151 to 188 months.

4

## II.     Section 3553(a) Factors

After calculating the Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009). The United States that a sentence within the guidelines range of 151 to 188 months is necessary and appropriate. As further discussed below, the defendant not only engaged in the online trafficking of CSAM, but has a history and pattern of engaging and trying to engage in sexual conduct and conversations with minors online.

### A.     The Nature, Circumstances, and Seriousness of the Offenses

The defendant has pleaded guilty to trafficking in CSAM, seeking out other individuals on the internet to build and share his CSAM collection. He was a member of a group called Cocks, Cunts, and Kids, whose name makes very clear its purpose and casually callous treatment of children. He clearly sought out individuals across the internet for the specific purpose of sharing (and expanding) his CSAM collection for his sexual gratification. The files the defendant possessed and shared consisted of images and videos of prepubescent children, including infants, being forcibly raped and exploited for the sexual pleasure of adults on the internet. These young victims of sexual exploitation often experience the most significant disruption to their development, a fact that is amply demonstrated in the victims' letters to the court.

Trafficking in CSAM inflicts additional harm beyond even that of the original production. As courts have regularly recognized, "[s]uch images are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (internal quotation marks omitted). These children, "who must live with the knowledge that adults like [the defendant] can pull out a picture or watch

a video that has recorded the abuse of [them] at any time," "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir. 2001).

It is always highly traumatic for a child to suffer from sexual abuse at the hands of an adult. But many victims of child pornography trafficking suffer even more, as there is no foreseeable end to their victimization. Not only were they traumatized by the initial sexual abuse that was captured on film, but they are also further victimized through the ongoing distribution and consumption of depictions of their abuse. Once these images have been distributed over the internet, it is impossible for them to be fully recovered. As one victim describes, because images of her sexual abuse are available online, she has had to suffer twice: "the first time was being abused and the second time is the ongoing anxiety due to the images of my abuse forever accessible." PSR at 41. She states that she fears being married and having children as a result of her abuse. *Id.* Every day is filled with anxiety and discomfort, as "it's impossible to cope and accept that I have to live with the images of my abuse being available on the internet indefinitely. These images will live on the internet longer than I will live." *Id.*

Another victim reports that her abuse—and its ongoing perpetration on the internet—has affected every aspect of her life. She struggles to form romantic relationships and friendships, and she suffers from PTSD, anxiety, and paranoia. *Id.* at 48. Her physical health has suffered along with her mental health, and the two prevent her from working or attending school normally. *Id.* at 48-49. She has concluded her whole "future is messed-up and limited." *Id.* at 49. There is no portion of her life that has not been affected for the worse.

A guidelines term of imprisonment is necessary to reflect the defendant's very serious criminal conduct.

## B. The Defendant's Characteristics, Protection of the Public, and Deterrence

The defendant's conduct extends beyond the trafficking of CSAM to direct contact with minors: He has a history and pattern of engaging and trying to engage in sexual conduct and conversations with minors online. For example, law enforcement located a chat between the defendant and Identified Minor 2 in which he manipulated her by offering access to the public figure he knew she "love[d] most in the world." Law enforcement found 11 images of this minor on the defendant's phone, including nude images with her breasts and pubic region exposed. In other instances, the defendant concealed his identity while he engaged in online exploits with random minors he sought out on the internet. He even posed as an adolescent girl himself, using that persona to engage in sexual conversations with other young girls. He received pictures of an apparent minor's breasts and covered genitalia region, and responded that he thought "u were gonna pose without the shorts lol." PSR ¶ 63.

Moreover, the defendant's interests in CSAM are broad. The evidence reveals a man interested in trading images depicting everything from the rape of infants, to the bondage and S&M treatment of prepubescent boys, to the sexual exploitation of late adolescents. His conduct spans multiple platforms and years. His devices contained conversations with minors on Snapchat, Instagram, and Omegle, among others. The evidence spans numerous devices and nearly a decade of time. A significant sentence of imprisonment is warranted to deter the defendant and others from engaging in this conduct in the future.

## III. Mandatory Special Assessments Under 18 U.S.C. §§ 2259A(a)(3), 3014 & 3013

On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act. The Act instructs that, in addition to any restitution or other special assessment, courts "shall assess (1) not more than $17,000 on any person convicted of an offense

under §§ 2252(a)(4) or 2252A(a)(5); [and] (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography…" 18 U.S.C. §§ 2259A(a)(1) & (a)(2). Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, *see* §§ 2259(d) & 2259B, and shall be paid in full after any special assessment under § 3013 and any restitution to victims of the defendant's offense, *see* § 2259A(d)(2). In determining the amount to be assessed under § 2259A, courts should consider the sentencing factors set forth in § 3553(a) and the guidance in § 3572 for the imposition of fines. § 2259A(c). The United States respectfully requests that the Court impose a reasonable special assessment under § 2259A, in addition to the $200 mandatory special assessment for his felony convictions pursuant to 18 U.S.C. § 3013.

Additionally, under the Justice for Victims of Trafficking Act, courts "shall assess an amount of $5,000 on any non-indigent person" convicted of certain enumerated offenses, including transportation and possession of child pornography. The United States respectfully requests that the Court impose the $10,000 special assessment ($5,000 per applicable count of conviction) on the defendant. *See* 18 U.S.C. § 3014.

IV. **Restitution**

Pursuant to 18 U.S.C. §§ 2259 and 3663, the defendant must pay restitution in the "full amount of the victims' losses." Additionally, as part of the plea agreement entered into by the parties, the defendant has agreed that restitution is mandatory under § 2259. The defendant has also agreed that the Court may defer the imposition of restitution until after sentencing and to waive the requirement under 18 U.S.C. § 3664(d)(5) that the Court determine a final restitution amount no later than ninety days after sentencing. The parties respectfully request that this Court set a restitution hearing within 90 days of the sentencing hearing.

V.  **Forfeiture**

The United States submitted a consent order for forfeiture, signed by the defendant and his counsel, during the plea agreement hearing. The government respectfully requests that the Court order such forfeiture as part of the judgment.

## **CONCLUSION**

For the reasons stated, the United States requests that this Court impose a guidelines term of incarceration of 151 to 188 months.

Respectfully Submitted,

Jessica D. Aber
United States Attorney

Date: _September 22, 2023_____

By: ___/s/_____
Zoe Bedell
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Ave
Alexandria, Virginia 22314
Phone: 703-299-3700

Whitney Kramer
Trial Attorney
U.S. Department of Justice
Child Exploitation & Obscenity Section
1301 New York Avenue, N.W.
Washington, DC 20530
202-514-5780