IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

--o0o--

THE PEOPLE OF THE STATE OF CALIFORNIA, )
                                    )
         Plaintiff,         )
     vs.                     )  Case No.
                                      )  21-SF-006855-A
ALEXANDER LEVY,               )
                                      )
         Defendant.         )
_____ )

**REPORTER'S EXCERPTED TRANSCRIPT OF PROCEEDINGS**

**TESTIMONY OF WITNESS TOBIAS WULFF**

BEFORE THE HONORABLE DONALD J. AYOOB, JUDGE

DEPARTMENT 27

THURSDAY, NOVEMBER 17, 2022

A P P E A R A N C E S:

FOR THE PLAINTIFF:     STEPHEN M. WAGSTAFFE,
                           DISTRICT ATTORNEY
                           OF SAN MATEO COUNTY
                           BY:  DOMINIQUE DAVIS, Deputy
                           400 County Center
                           Redwood City, California 94063

FOR THE DEFENDANT:    NOLAN BARTON OMOS & LUCIANO, LLP
                           BY:  DANIEL BARTON, Esq.
                           BY:  CAMDEN VILKIN, Esq.
                           600 University Avenue
                           Palo Alto, California 94301

--o0o--

Jacquelyn Haupt, CSR, RPR
CSR License No. 13964

**SESSIONS**

| DATES | PROCEEDINGS | PAGE | LINE |
|---|---|---|---|
| 11/17/22 A.M. | Excerpted Proceedings | 3 | 1 |

**BY THE PEOPLE**

**WULFF, TOBIAS**

| EXAMINATIONS | PAGE | LINE |
|---|---|---|
| Direct Examination by Ms. Davis | 4 | 22 |
| Voir Dire Examination by Mr. Barton | 21 | 5 |
| Direct Examination (Continued) by Ms. Davis | 28 | 12 |
| Cross-examination by Mr. Barton | 29 | 7 |
| Redirect Examination by Ms. Davis | 46 | 24 |
| Recross-examination by Mr. Barton | 47 | 22 |

**EXHIBITS**

**FOR THE PEOPLE**

| EXH | DESCRIPTION | MARKED PAGE | MARKED LINE | ENTERED PAGE | ENTERED LINE |
|---|---|---|---|---|---|
| 1 | CyberTipline Report 73001154 | 8 | 16 | | |

```
 1  THURSDAY, NOVEMBER 17, 2022              REDWOOD CITY, CA
```

 2                          <u>**MORNING SESSION**</u>

 3                   **P R O C E E D I N G S**

 4          MS. DAVIS:  At this time, Your Honor, the

 5  People call Tobias Wulff to the stand.

 6          THE COURT:  Come on up here.  Please stand next

 7  to this beige chair, face the clerk, and raise your right

 8  hand.

 9          THE CLERK:  Do you solemnly state under penalty

10  of perjury that the evidence you shall give in this

11  matter shall be the truth, the whole truth, and nothing

12  but the truth?

13          THE WITNESS:  I do.

14          THE CLERK:  Thank you.  Please be seated.

15          And for the record, can you state and spell

16  your first and last name, please?

17          THE WITNESS:  Yes.  My name is Tobias Wulff.

18  First name Tobias, T-o-b-i-a-s.  Last name Wulff,

19  W-u-l-f-f.

20          THE COURT:  Mr. Wulff, first of all, I'm not

21  sure that that microphone is on.

22          Thank you.

23          Have you testified before?

24          THE WITNESS:  I have not.

25          THE COURT:  Okay.  So a few quick rules of the

26  road.  Please make yourself comfortable.  Move the mic

1    any way you want to so you sit comfortably and speak into

2    the microphone.

3            Please wait until the attorney's question is

4    complete before you begin your answer, even if you know

5    what the answer is before they stop.  If two people are

6    speaking at the same time, it makes it very difficult for

7    the reporter to accurately record the proceedings.

8            If an objection is lodged by the opposing party

9    of the questioner, please do not answer until I have a

10   chance to rule on the objection.  "Sustained" means

11   you're not to answer.  "Overruled," you may answer.

12           You with me?

13           THE WITNESS:  With you.

14           THE COURT:  Any questions?

15           THE WITNESS:  Not so far.

16           THE COURT:  Let's go.

17           MS. DAVIS:  Thank you.

18                          **TOBIAS WULFF**,

19           called as a witness on behalf of the People,

20   having been first duly and regularly sworn, testified as

21   follows:

22                     **DIRECT EXAMINATION**

23       Q.  BY MS. DAVIS:  Mr. Wulff, how are you employed?

24       A.  I'm employed by Dropbox, and I'm the content

25   safety manager.

26           MR. BARTON:  Excuse me.  The what manager?

1             THE WITNESS:  Content safety manager.

2             MR. BARTON:  Thank you.

3       Q.  BY MS. DAVIS:  As a content safety manager,

4   what are your duties?

5       A.  My duties are to run a team that reviews and

6   enforces Dropbox's AUP or acceptable use policy.

7       Q.  Are you familiar with the term "CyberTip"?

8       A.  I am.

9       Q.  And will you please briefly describe for us

10  what a CyberTip is?

11      A.  A CyberTip is the result of a review specific

12  to child sexually explicit material that is provided to

13  NCMEC, the National Center of Exploited and Missing

14  Children [sic].

15            THE COURT:  I'm going to ask you to try and

16  keep your voice up.  I often tell witnesses use your

17  outside voice.

18            THE WITNESS:  You got it.

19            THE COURT:  All right.  Thank you.

20      Q.  BY MS. DAVIS:  Now, is there a procedure that

21  Dropbox, Incorporated, employs in order to enforce this

22  AUP, as you call it?

23            MR. BARTON:  Objection.  Vague as to time.

24            THE COURT:  Do you understand the question?

25            THE WITNESS:  I was going to ask for a

26  clarification.

1        THE COURT:  Why don't you restate it?

2     Q.  BY MS. DAVIS:  Okay.  Is there -- when CSAM is

3  located in a Dropbox user's account, is there a certain

4  procedure an employee must follow upon locating it?

5        MR. BARTON:  Objection.  Vague as to time.

6        THE COURT:  You know, sustained.  I'm not sure

7  exactly -- give me a second so I can open a file.

8        Now you want to restate the question for me?

9  Because I'm -- I was distracted.  Please go ahead.

10     Q.  BY MS. DAVIS:  Okay.  My understanding -- and

11  maybe I misheard -- is that part of your team's job is to

12  identify child sexual abuse material.  And just so that

13  we don't have to keep saying that, it's CSAM, C-S-A-M.

14  Is that correct?

15     A.  Yes.

16     Q.  Okay.  So what I'm asking is what is the

17  company's policy and procedure for your team when that

18  CSAM has been identified?

19        MR. BARTON:  And I will renew my objection of

20  vague as to time.

21        THE COURT:  Yeah.  What was it at the time of

22  this offense is what your objection is.

23        Did you understand the question in that

24  fashion?

25        THE WITNESS:  I understand the question.

26        THE COURT:  You may answer it with that

1   amendment.

2          THE WITNESS:  The answer is yes.  At the time,

3   we have a process to review CSAM.

4          THE COURT:  What was the process?

5          THE WITNESS:  The process is to review whatever

6   piece of content that a reviewer comes across.  And we

7   follow pretty strict policy and protocols that involve

8   things like the Tanner scale to identify age as well as

9   the actual acts within the piece of content.

10     Q.  BY MS. DAVIS:  Okay.  Now, when you say

11  "review," does that mean that a Dropbox employee actually

12  visually sees the CSAM content?

13     A.  That is correct.

14     Q.  And is part of the policy and procedure of

15  Dropbox to then create a -- or generate a CyberTip to be

16  forwarded to NCMEC?

17     A.  That is in compliance with the law.  We are

18  obligated by law to do so.

19     Q.  Okay.  And in that CyberTip, does Dropbox

20  include information about whether or not the employee had

21  seen the image?

22          MR. BARTON:  Objection.  This appears to be

23  calling not -- if this is just about policy and practice,

24  I don't have an objection.  If this is about what

25  happened on this occasion, I do have an objection.

26          THE COURT:  No, I understand.  I understood the

1    question still to be in the general policy realm.

2         Is that correct, ma'am?

3         MS. DAVIS:  Yes, Your Honor.

4         THE COURT:  Overruled.

5         THE WITNESS:  Yes.

6    Q.  BY MS. DAVIS:  Okay.  And is the employee

7    required to include a classification, as you called it,

8    of what kind of CSAM material they believe they've seen?

9    A.  Yes.

10   Q.  And can you for us briefly describe what that

11   classification is or how it works?

12   A.  The classifications range from a taxonomy of

13   A1, A2, B1, and B2.  And that is dependent on the age of

14   the subject in the content.  And the number is correlated

15   to the specific act within that piece of content.

16        (People's Exhibit 1, having been premarked,

17   identified for the record.)

18   Q.  BY MS. DAVIS:  I would like to show you what

19   has been previously marked as People's Exhibit 1.  It has

20   been provided to defense counsel in discovery.  It is a

21   six-page document.  I'd ask you to look at these six

22   pages and tell me if you recognize what this is.

23        MR. BARTON:  Is that the CyberTip report?

24        MS. DAVIS:  Yes.

25        THE WITNESS:  Yes.  That's exactly -- it looks

26   like a CyberTip report.

1    Q.   BY MS. DAVIS:   Okay.   Now, when you look at

2  that document, does it comply with the policies and

3  procedures of Dropbox, of the requirements?

4         MR. BARTON:   Objection to the form of the

5  question.   This is a document generated by NCMEC.   And I

6  don't believe that a document generated by NCMEC can

7  either conform or not conform with the Dropbox policy.

8         THE COURT:   NCMEC is a separate entity from

9  Dropbox?   That's your point?

10        MR. BARTON:   Right.   NCMEC is -- it's a

11 quasi-private interrelated-to-the-government organization

12 called the National Center for Missing and Exploited

13 Children.   And this is a document produced by NCMEC in

14 response to the tip from Dropbox.

15        THE COURT:   Got it.

16        MS. DAVIS:   If I may, Your Honor?

17        THE COURT:   Go ahead.

18        MS. DAVIS:   This witness is testifying, based

19 on his experience and his role, to information that

20 Dropbox employees are required to put inside of a

21 CyberTip.   This is a CyberTip, as he has now recognized

22 it.   I think he can testify whether or not the

23 information included matches the policies of their

24 company.

25        THE COURT:   So if I understand correctly,

26 People's 1 contains information provided to NCMEC by a

1  Dropbox employee; correct?

2          MS. DAVIS:  That's correct, Your Honor.

3          THE COURT:  Overruled.

4          You can answer.

5          THE WITNESS:  Can you please repeat?

6      Q.  BY MS. DAVIS:  Yes.

7          Based on your review of that CyberTip, does the

8  information contained therein comply with the

9  requirements of Dropbox employees upon locating CSAM?

10     A.  Yes.

11     Q.  And just for the record, on the first page, is

12 that CyberTip Report Number 73001154?

13     A.  Yes.

14     Q.  Okay.  Now, you previously testified that you

15 have -- or Dropbox has a legal obligation to report CSAM

16 when it's found.  When those reports are being made, are

17 they at the behest or request of law enforcement?

18         MR. BARTON:  Objection.  Calls for an opinion.

19 Kind of calls for a legal conclusion.

20         THE COURT:  Yeah.  As I understand it, it's

21 a -- when you say "a legal obligation," that's a

22 statutory obligation.  That's what you mean; correct?

23         MS. DAVIS:  Yes.  I guess, technically.

24         THE COURT:  Yeah.  And it does call for a legal

25 conclusion.  Sustained.

26     Q.  BY MS. DAVIS:  Okay.  I'm going to go back to

 1 │ your job.  How long have you been in this position?

 2 │      A.  I joined Dropbox in April of this year.

 3 │      Q.  And what training and experience did you have

 4 │ to receive to become a manager of your team?

 5 │      A.  Ample training revolved around many documents,

 6 │ training workflows through presentations, again, that go

 7 │ into the depths of exactly defining what is and isn't

 8 │ CSAM.

 9 │           MR. BARTON:  May I make a motion to strike the

10 │ totality of his testimony regarding policies that were in

11 │ place in 2020 before he joined Dropbox as hearsay?

12 │ Because I think there needs to be some foundation.

13 │           THE COURT:  Do you wish to be heard?

14 │           MS. DAVIS:  I'm getting to the foundation as

15 │ I'm speaking with this witness, Your Honor.

16 │           THE COURT:  Okay.  Subject to a motion to

17 │ strike.  If she can lay a proper foundation, we'll deal

18 │ with it then.

19 │           Go ahead.

20 │      Q.  BY MS. DAVIS:  And did part of that training to

21 │ be in your position go over what your obligations are as

22 │ a member of Dropbox if you locate CSAM material?

23 │      A.  Yes.

24 │      Q.  And what are those obligations that you were

25 │ trained in?

26 │           MR. BARTON:  Objection.  Relevance and hearsay

1   and -- and irrelevant as to time.

2          THE COURT:  I understand that was the relevance

3   objection.  That's -- I'll take that under submission for

4   a future motion to strike if she can't lay the foundation

5   as to the duration of those procedures.

6          With regard to hearsay, I understand it to be

7   being offered what he understands his obligations are and

8   therefore his state of mind.  It will come in for that

9   purpose.

10          MR. BARTON:  Thank you.

11          THE COURT:  Go ahead.

12      Q.  BY MS. DAVIS:  Are you aware of what the

13   policies regarding locating CSAM materials are or were in

14   May of 2020?

15      A.  I have a rough understanding, yes.

16      Q.  And what is that rough understanding based on?

17          MR. BARTON:  Is my objection a continuing

18   objection?

19          THE COURT:  It's so understood.  Let's get

20   through the foundation, and then you can argue it as to

21   whether it's made or not.

22          Go ahead.

23          THE WITNESS:  One more time, please?

24      Q.  BY MS. DAVIS:  Sorry.

25          What is your rough understanding of the

26   policies in 2020 based on?

1      A.  My understanding is based on most of the same

2  training material and policies that are in place today.

3      Q.  And I guess I'll say, how do you know that the

4  training policies were the same when you came into the

5  company as they were in May of 2020?

6      A.  Through historical documentation.

7      Q.  Okay.  And were those documents you received

8  from the company?

9      A.  Yes.

10     Q.  Okay.  Are you aware -- it's okay if you're

11 not, but are you aware when this obligation to report

12 CSAM material to NCMEC came about?

13     A.  I'm not fully aware.

14     Q.  In your role as a manager, have you ever been

15 informed that policies had recently changed?

16     A.  No.

17     Q.  Do you work with anyone who worked there in May

18 of 2020?

19     A.  I'm not fully sure.

20     Q.  Okay.  And regarding the obligation to report,

21 where did you learn of that?

22     A.  I learned of obligations, again, through

23 training and reviewing our kind of workflow and policies.

24 Part of that is explicitly calling out what our

25 obligations are in relation to reviewing CSAM material.

26     Q.  And in your training, do they inform you

1  whether or not this is a legal requirement of the

2  company?

3          MR. BARTON:  Objection.  Leading.

4          THE COURT:  Overruled.

5          THE WITNESS:  Yes.

6      Q.  BY MS. DAVIS:  And is it a legal requirement of

7  the company?

8      A.  Yes.

9          MS. DAVIS:  Okay.  I don't believe I have

10  anything further for this witness, Your Honor.  I believe

11  the foundation has been laid.  If --

12          THE COURT:  Mr. Barton?

13          MR. BARTON:  So I'm not -- is this just the

14  foundation for his continuing to testify regarding

15  policies, or are you resting with this witness?

16          MS. DAVIS:  I'm resting with the witness, but I

17  need to know if the motion to strike --

18          THE COURT:  Well, that's why I'm inviting him

19  to argue it.

20          MR. BARTON:  So Mr. Wulff was not employed in

21  2020.  He doesn't know if any of the people who are

22  reviewers were doing it in 2020.  He has no firsthand

23  knowledge about how the system worked in 2020.  He

24  shouldn't be able to testify as to how things worked in

25  2020.  It's all hearsay.

26          THE COURT:  I have a little problem with the

1   hearsay aspect.  It seems as though he can't even testify

2   from personal knowledge that the policy -- he did testify

3   that he believes the policies in place today were the

4   same at that time, but that's hearsay.  He's not at

5   Dropbox two years earlier than his hire.

6           MS. DAVIS:  But, Your Honor, he got the

7   information from training and materials.  He's not saying

8   someone told him that.  This is from materials that he

9   received, so it's not hearsay.  It's his training.  It's

10  his experience and what he had to learn in order to be in

11  the position that he is in.  So I do not believe it's

12  based on -- or only based on hearsay.  It's not as though

13  someone just told him something is the same.  He has

14  reviewed documentation.  That is how he's getting this

15  information.

16          THE COURT:  Go ahead.

17          MR. BARTON:  I think that that's classic

18  hearsay.  You review documentation.  You believe the

19  document.  That's just as if somebody had told him.

20          THE COURT:  In other words -- excuse me.  I'm

21  sorry for speaking over you, Mr. Barton.

22          The documentation itself, not having been

23  authenticated in court, is an out-of-court statement

24  offered for the truth of the matter stated in the

25  documentation.  It is hearsay.

26          MS. DAVIS:  I don't really believe it's offered

1   for the truth of the matter asserted, Your Honor.

2        THE COURT:  Well, no.  His statement that the

3   policy in 2020 based on something he read is being

4   offered for the truth of the matter of what he read.

5   It's -- in terms of his state of mind, he believes it to

6   be so.  But he can only believe it to be so if the

7   statements in the documentation are, in fact, true.

8        MS. DAVIS:  Well, in that case, Your Honor, the

9   People would seek to identify this witness as an expert

10  in Dropbox Incorporation's policy and procedure and

11  reporting CSAM material.

12       THE COURT:  Mr. Barton, do you wish to be heard

13  on that?

14       MR. BARTON:  I don't believe he will qualify as

15  to the procedures in place at Dropbox in 2020 at the

16  relevant time.  And in laying a foundation, I think we've

17  exposed his lack of expertise regarding the practices of

18  the individuals employed at Dropbox during the relevant

19  time period.

20       THE COURT:  Let's talk about whether he

21  qualifies as an expert witness in the current policies of

22  Dropbox because I would suggest that that is something --

23  what the policies are of Dropbox is something outside the

24  kin of the trier of the fact.  I don't know what the

25  policies are; right?  He can testify as to what they are

26  today if he has expertise in that area because he manages

1   that section.  He has particular expertise in the area.

2   And he can rely on hearsay to say what the procedures are

3   certainly today.  And then he could, I suppose, opine as

4   to what they were two years prior to his hire.  I take

5   that to be the thrust of Ms. Davis's proffer.

6           MS. DAVIS:  That's correct, Your Honor.

7           MR. BARTON:  And I agree that he would likely

8   qualify as an expert as to the present procedures and

9   suggest that the timing issue renders the relevant

10  testimony outside the scope of his expertise.

11          THE COURT:  In terms of what I know about -- I

12  take it these were written procedures that you reviewed

13  as part of your training; correct?

14          THE WITNESS:  Yes.

15          THE COURT:  All right.  From what I know so

16  far, I think his objection is well taken as to the

17  connection of the timing.  Why don't you explore that a

18  little bit with him as to how he knows the -- when those

19  publications were generated, et cetera, if he does?

20          MS. DAVIS:  Okay.

21          THE COURT:  Go ahead.

22      Q.  BY MS. DAVIS:  Do you have any idea how long

23  Dropbox has been using the training materials that you

24  received in the course of your duties?

25          MR. BARTON:  Objection to the form of the

26  question.  It calls for hearsay.  "Do you have any idea?"

1          THE COURT:  Yeah.  Yeah.  Sustained as phrased.

2     Q.  BY MS. DAVIS:  Do you know what written

3  materials Dropbox required you to become familiar with in

4  order to receive your position?  Do you know how long

5  Dropbox has used those materials?

6          MR. BARTON:  Objection.  Compound.

7          THE COURT:  Do you understand the question?

8          THE WITNESS:  I believe I do.

9          THE COURT:  You may answer.

10          THE WITNESS:  Yes.  Those materials have been

11  at Dropbox long before I joined.  And if I could add,

12  classifying CSAM has remained the same as long as I can

13  remember.

14     Q.  BY MS. DAVIS:  Can you try -- or

15  specifically -- when you're saying for a long time and

16  for as long as you can remember, is that before May of

17  2020?

18     A.  Yes.

19          MR. BARTON:  Objection.  Vague as to what we're

20  asking is before 2020.

21          THE COURT:  Sustained.

22     Q.  BY MS. DAVIS:  Okay.  You talked about two

23  things.  So the materials themselves, when you say that

24  they have been used by Dropbox for a long time, I think

25  is the words you used, does that mean prior to May of

26  2020?

1        A.   It does.

2             MR. BARTON:   Objection.   Outside the scope of

3    personnel knowledge.

4             THE COURT:   Sustained as phrased.

5             May I?

6             MS. DAVIS:   Yes.

7             THE COURT:   The materials we're talking about,

8    are they in hard copy, or are they online or both?

9             THE WITNESS:   Online.   Or they're -- yeah.

10            THE COURT:   All right.   So it's a document in a

11   file in Dropbox's network?

12            THE WITNESS:   Correct.   Internal document.

13            THE COURT:   Got it.   And then is there anything

14   on those internal documents that displays their last

15   edited date?

16            THE WITNESS:   It depends on the documents, but

17   yes.

18            THE COURT:   Right.   And the documents we're

19   talking about are the training materials related to CSAM

20   treatment and reporting?

21            THE WITNESS:   That's correct.

22            THE COURT:   And those have some sort of

23   designated last edited date?

24            THE WITNESS:   Yes.

25            THE COURT:   Are you familiar with what the last

26   edited date is on the materials we've been talking about?

1          THE WITNESS:  I can't say for sure.

2          THE COURT:  All right.  Next question.

3     Q.  BY MS. DAVIS:  And would it refresh your

4  recollection if you were able to look at those documents?

5     A.  Yes.

6          MS. DAVIS:  If I could have a moment,

7  Your Honor?

8          THE COURT:  Sure.  Of course.

9     Q.  BY MS. DAVIS:  And are those located online for

10  anyone to see, or would you have to be at the Dropbox

11  location?

12     A.  You would have to be a Dropbox employee.

13          THE COURT:  So you could be off-site working

14  from home on a VPN, and you can access the document?

15          THE WITNESS:  That's correct.

16          THE COURT:  Go ahead.

17     Q.  BY MS. DAVIS:  So I guess I'm wondering then

18  why you believe that the current policies regarding CSAM

19  reporting have been in place for a long time.

20     A.  Because when I onboarded and joined Dropbox,

21  part of my training was ample amount of reading those

22  documents that cover both historical and current

23  policies.

24          MS. DAVIS:  So I would make the same motion,

25  Your Honor, to designate this witness as an expert in the

26  policies and procedures of Dropbox as it applies to CSAM

1  reporting.

2          THE COURT:  Do you wish to be heard?

3          MR. BARTON:  Yes.

4          THE COURT:  Go ahead.

5                  **VOIR DIRE EXAMINATION**

6      Q.  BY MR. BARTON:  Regarding the procedures that

7  were actually followed, have you spoken with people who

8  did the reviewing work in 2020?

9      A.  It's tough to say for sure.

10     Q.  Do you know who was employed as a reviewer for

11 Dropbox in May of 2020?

12     A.  Our team is employed by contractors that are --

13 have time limits on their allowed employment, so I can't

14 distinguish who was and who wasn't there.  The team is

15 relatively large, and because of that time limit, I can't

16 say for sure.

17     Q.  Are the people who do the reviews employees of

18 Dropbox?

19     A.  I'm not a legal employment lawyer, so I don't

20 feel comfortable answering that.

21     Q.  Fair enough.

22         Is there a policy at Dropbox to maintain a link

23 between who the reviewer is and the tip that results from

24 their review?

25     A.  Yes.

26     Q.  So as to this review, the CyberTip that's been

1    marked as Exhibit Number 1, does Dropbox know who

2    conducted the actual review?

3                MS. DAVIS:  Objection.  Beyond the scope of his

4    expertise.

5                THE COURT:  Overruled.  No.  It's questioning

6    his expertise.  Overruled.

7                Do you understand the question?

8                THE WITNESS:  I do.

9                THE COURT:  You may answer.

10               THE WITNESS:  Can you repeat, please?

11       Q.  BY MR. BARTON:  Does Dropbox know who the

12   individual is that conducted the review that resulted in

13   the CyberTip that's been identified as Exhibit Number 1?

14       A.  Yes, depending on data retention.

15       Q.  And are there records at Dropbox that maintain

16   a link between the individual reviewer and the material

17   that they identified as CSAM?

18       A.  Again, yes, depending on data retention

19   policies.

20       Q.  In your role as content safety manager, do you

21   do any type of quality control to see whether the

22   reviewers are actually following the policies of Dropbox?

23       A.  Yes.

24       Q.  And are you aware of the level of review that

25   was in effect for reviewers in May of 2020?

26       A.  I'm not understanding the question.

1    Q.   Well, do you know whether there was any type of

2    review or quality control that was given to the reviewers

3    who were looking for CSAM in May of 2020?

4    A.   Yes.

5    Q.   And what was the level of quality control for

6    reviewers looking for CSAM in May of 2020?

7         MS. DAVIS:  Objection.  Vague.

8         THE COURT:  Do you understand the question?

9         THE WITNESS:  Can you repeat?

10   Q.   BY MR. BARTON:  Sure.  Let me ask a better

11   question.

12        Can you describe the quality control procedures

13   that Dropbox employed for the reviewers who were looking

14   for CSAM in May of 2020?

15   A.   Not confidently.

16   Q.   Have you done anything to learn about the

17   quality control procedures that Dropbox had in place to

18   review the work of reviewers in May of 2020?

19   A.   It's tough to say.

20   Q.   Does Dropbox keep records regarding quality

21   control of -- and performance of individuals employed to

22   be reviewers for CSAM material?

23   A.   I didn't understand.

24   Q.   Thanks.  When you don't understand, please make

25   it clear.  And that means I'm not doing my job well, and

26   I'll ask a better question.

1      Does Dropbox maintain records as a type of

2 performance review or accuracy of people who were

3 performing reviews for CSAM in May of 2020?

4      A.  The data retention policies are out of my

5 scope.  I can't say.

6           THE COURT:  Can I?

7           Just to clarify, when you refer to something

8 called "data retention policies," can you explain that a

9 little bit, what you mean by that?

10           THE WITNESS:  Sure.  So Dropbox, like any other

11 company, has loads of data.  And some of -- retention is

12 how long you keep it for, right, in keeping records.  How

13 long is out of scope.  They follow typical data retention

14 laws that I'm not keen on.

15           THE COURT:  All right.  And so when you had

16 said about linking the reviewer to a particular CyberTip,

17 there is such a record subject to the duration of

18 retention that is the policy of Dropbox; correct?

19           THE WITNESS:  That's right.

20           THE COURT:  If I may?  One more.

21           MR. BARTON:  Certainly.

22           THE COURT:  Are you aware of what the time

23 period is for data retention for such a record?

24           THE WITNESS:  I'm not.

25           THE COURT:  All right.  Go ahead, Counsel.

26 Pardon the intrusion.

1      Q.  BY MR. BARTON:  Do you know who performed the

2  review of the CSAM material at issue in the CyberTip

3  73001154, which is now identified as Exhibit 1?

4          MS. DAVIS:  Also, objection.  Doesn't go to his

5  expertise.

6          THE COURT:  To the contrary.  I think it does.

7          Go ahead.  You may answer.

8          THE WITNESS:  By name, no.

9      Q.  BY MR. BARTON:  By some other identifier?

10     A.  Not off the top of my head.

11     Q.  Is that information that you had at one point

12  but you no longer remember?

13     A.  I can't confidently answer that.

14     Q.  Has anybody told you not to report the identity

15  of the individual who conducted the review for the

16  CyberTip that's been identified as Exhibit Number 1?

17     A.  One more time, please?

18     Q.  Has anybody told you not to remember or not to

19  reveal the identity of the reviewer of the CyberTip

20  that's been marked as Exhibit Number 1?

21          MS. DAVIS:  Objection.  Doesn't go to his

22  expertise.

23          THE COURT:  Yeah.  I agree with that.  And I

24  don't think he's -- I think he's testifying he can't

25  conjure that name sitting here today.  But from my point

26  of view as the trier of fact, what's important is whether

1    he's capable of retrieving that name based on their data

2    retention policy, if that makes sense, Counsel.

3              MR. BARTON:  It does.

4              THE COURT:  Please go ahead.

5         Q.  BY MR. BARTON:  As content safety manager, are

6    you the individual responsible for enforcing Dropbox

7    policy as to how reviewers do their work?

8         A.  Yes.

9         Q.  As to present Dropbox procedures and policies,

10   do you keep records as to performance issues and quality

11   control issues of reviewers looking for CSAM material?

12        A.  Yes.  We have quality measures in place.

13        Q.  Have you looked at those quality measures for

14   how the reviewers perform their duties in May of 2020?

15        A.  Please repeat.

16        Q.  So I know you weren't working in May 2020.  In

17   your role as content safety manager, have you looked back

18   to May of 2020 to look at those metrics of job

19   performance quality control for reviewers in May 2020?

20        A.  Not explicitly.

21             MR. BARTON:  I'd object to this witness being

22   permitted to testify as to policies or procedures for

23   2020 but certainly not procedures.  If he testifies that

24   the policies were in effect or the policies weren't

25   edited substantially and were very similar to what was in

26   place in May 2020, he may be able to do that with a

1   sufficient foundation.  I don't think that's been laid.

2   But I don't think he's going to be able to testify about

3   the procedures that were actually in place, about how

4   people did their work in 2020 or specifically for this

5   CyberTip.

6           THE COURT:  Ms. Davis?

7           MS. DAVIS:  Thank you, Your Honor.

8           As the Court is aware, all that is required for

9   an expert is that he have special knowledge, skill,

10  training, or education sufficient to qualify him as an

11  expert on a particular subject to which his testimony

12  relates.  This witness has said that he's reviewed

13  current and historical data regarding Dropbox's policies

14  and procedures when it comes to reporting CSAM material.

15  That means that he has training and experience above that

16  of -- whether it be you, Your Honor, or a jury, above

17  that of the trier of fact, and he can explain those

18  policies and procedures to the trier of fact based on his

19  training and experience.  He then can opine as to what

20  the policies and procedures were in 2020, and the Court

21  then can weigh whether -- or give it as much weight as

22  the Court would like.  But there is nothing about what

23  this witness had testified to that suggests his testimony

24  should be stricken and that he is not qualified to be an

25  expert in this very small area.

26          THE COURT:  Indeed arcane.

1          Is the matter submitted?

2          MS. DAVIS:  Yes, Your Honor.

3          MR. BARTON:  Yes, Your Honor.

4          THE COURT:  All right.  Thank you.

5          I'm going to allow him to testify as an expert.

6   I agree it goes to the weight of his opinion given that

7   he's relying on internal documents that he's familiar

8   with.  And by all accounts, those documents set forth a

9   procedure that he believes was in effect in May of 2020.

10          MS. DAVIS:  Thank you, Your Honor.

11          THE COURT:  Go ahead.

12          **DIRECT EXAMINATION (CONTINUED)**

13      Q.  BY MS. DAVIS:  And so if I can ask just for

14   clarity.  In May of 2020, were reviewers of Dropbox

15   users' accounts required to visually look at the content

16   of the user account, classify it, and -- and classify it

17   prior to reporting it to NCMEC?

18      A.  Yes.

19          MR. BARTON:  May I have a standing objection on

20   the "vague as to time" issue?

21          THE COURT:  No.  She said May of 2020.

22          MR. BARTON:  Great.  Thank you.

23          MS. DAVIS:  Thank you, Your Honor.

24          THE COURT:  Overruled.

25      Q.  BY MS. DAVIS:  And lastly, just to clarify

26   something that just came up on cross, you testified that

1  you don't know if each reviewer legally is an employee of

2  Dropbox.  But are reviewers required to follow the

3  policies and procedures of Dropbox?

4       A.   Yes.

5            MS. DAVIS:  I have nothing further, Your Honor.

6            THE COURT:  All right.  And further cross.

7                       **CROSS-EXAMINATION**

8       Q.   BY MR. BARTON:  You indicated that you don't

9  know the identity, either name or some other identifier,

10 for the person who did the actual review.  Is that record

11 about who the reviewer was contained in any Dropbox

12 record?

13      A.   That's dependent on data retention.

14      Q.   If I were to request that record, how would I

15 describe the record that reveals the identity of the

16 reviewer?

17           MS. DAVIS:  Objection.  Relevance.

18           THE COURT:  No.  Overruled.

19           THE WITNESS:  How would you -- I'm not sure how

20 you would request that.

21      Q.   BY MR. BARTON:  Is that a document that you

22 have access to when you're logged on to the Dropbox

23 network?

24           MS. DAVIS:  Objection.  Vague as to "document"

25 and beyond the scope.  He wouldn't know what a lawyer

26 needs to do to request something from --

1          THE COURT:  No.  That's not what he's asking,

2     what a lawyer has to do.  He's asking does he have access

3     to the Dropbox document that identifies the link between

4     the reviewer and the CyberTip at issue in People's 1.

5          Did you understand the question that way?

6          THE WITNESS:  I understood it the former.  How

7     I understood it -- how he would, not how I would.

8          THE COURT:  That's not what he's asking now.

9     This question is do you have access -- correct me if I'm

10    wrong, Counsel.

11          Do you personally have access -- when you are

12    in your Dropbox employee account performing your duties,

13    do you have access to the document that links the

14    reviewer of People's 1 to the CyberTip in People's 1?

15          THE WITNESS:  It's less so much a document and

16    more so a data table that I would need assistance from

17    somebody else.

18          THE COURT:  But, again, that data table is

19    subject to data retention policies of Dropbox; correct?

20          THE WITNESS:  That's correct.

21          THE COURT:  So if it exists, you can get there?

22          THE WITNESS:  With the assistance of a

23    coworker.

24          THE COURT:  Got it.

25          Go ahead.  And forgive me for intruding on your

26    examination.

1      Q.  BY MR. BARTON:  Are there documents that

2  Dropbox maintains that will show the job performance and

3  reviews for the person -- job reviews of the person who

4  did the review for CyberTip that's been identified as

5  Exhibit Number 1?

6           MS. DAVIS:  Objection.  Relevance.

7           THE COURT:  No.  Counsel, if you're going to

8  introduce Number 1, he's allowed to learn as much as he

9  can about Number 1 and the production of it.  Overruled.

10           THE WITNESS:  Sorry.  Can you repeat?

11      Q.  BY MR. BARTON:  Yes.

12           Does Dropbox maintain records regarding the

13  performance and quality and performance issues for the

14  person who conducted the review that resulted in CyberTip

15  Exhibit Number 1?

16           MS. DAVIS:  Objection.  He's testified he

17  doesn't know who that person is.  Lack of personal

18  knowledge.

19           THE COURT:  This is about policies and

20  procedures as to --

21           MS. DAVIS:  That's not how I understood it,

22  Your Honor.

23           THE COURT:  Well, how did you understand the

24  question?

25           MS. DAVIS:  It's whether or not Dropbox

26  maintains records for the person who created the CyberTip

1  that has been put forth as People's 1.  That's a specific

2  person.

3          THE COURT:  Another way of saying it,

4  Mr. Wulff, is does Dropbox have a policy of maintaining

5  job performance records of people who act as reviewers of

6  this type of material?

7          THE WITNESS:  Yes.  But, again, it's dependent

8  on retention policies as well as, you know, who is and

9  isn't employed at Dropbox anymore.

10         THE COURT:  Understood.

11         Go ahead.

12     Q.  BY MR. BARTON:  Do you have Exhibit Number 1 in

13 front of you?

14     A.  The CyberTipline report?

15     Q.  Yes.

16     A.  Yes.

17     Q.  Looking at the front page of that, is that

18 something that's generated by Dropbox?

19     A.  I believe you already called out that this is a

20 document from NCMEC.

21     Q.  And going to page 2, which says "Contents,"

22 that's not something that's generated by Dropbox?

23         So I'm talking about the second page, not the

24 page that has the number 2.  I'm talking about the page

25 that's on the back of the cover that says "Contents."

26     A.  Section A, Section B, and Section C?

1     Q.  Well, no.  I'm talking about the page before

2  Section A that's marked "Contents."

3     A.  This page right here?

4     Q.  Correct.

5          THE COURT:  That appears to be what he's

6  looking at.

7          THE WITNESS:  Some of these things are what

8  Dropbox provides to NCMEC.

9     Q.  BY MR. BARTON:  So looking at pages that are

10 numbered pages 1 through 5, does that contain NCMEC's

11 report of information that was provided by Dropbox?

12    A.  Could you rephrase the question, please?

13    Q.  Yes.

14         Does the pages numbered 1 through 5 reflect

15 NCMEC's report of information provided by Dropbox?

16    A.  If you're referring to uploaded file

17 information --

18    Q.  I'm looking at all of Section A.

19         THE COURT:  You want to approach with that

20 document and just show him what you're talking about?

21         MR. BARTON:  Sure.  Approaching the witness.

22    Q.  BY MR. BARTON:  Do you see a portion that's

23 marked as Section A?

24    A.  Right here on the same page?

25    Q.  No.  Referring to here.  And then there's page

26 numbers there.

1            So looking through page 1 through 5, is that
2  NCMEC's report of the information provided by Dropbox?
3       A.  The information with each of these pages and
4  uploaded file information is information provided by
5  Dropbox.
6       Q.  And when we say "provided by Dropbox," how does
7  it get from the content reviewer to NCMEC?
8       A.  A reviewer reviews content and classifies it.
9  And upon that classification, a CyberTip is generated.
10      Q.  So it looks like the submitter is identified as
11 Dropbox legal team.  That's in the first section of
12 Section A on page 1.  Is this submitted by Dropbox legal
13 team?
14      A.  Content safety is a function of the legal team,
15 yes.
16      Q.  So are the reviewers part of the Dropbox legal
17 team?
18      A.  Under the umbrella of the legal team, yes.
19      Q.  So does the reviewer him- or herself submit the
20 material to NCMEC, or does it go through any
21 intermediates between the reviewer and the filing of the
22 CyberTip to NCMEC?
23      A.  I'm not sure what an intermediary would be
24 here.  Could you clarify, please?
25      Q.  Well, what I'm asking is, in May of 2020, did
26 the content reviewer directly file the report to NCMEC?

1  Or did the content reviewer give the results of their

2  review to some other person, and that other person

3  provided the information to NCMEC?

4      A.  Another person did not provide the information

5  to NCMEC.

6          THE COURT:  So it goes directly from the

7  reviewer to NCMEC?

8          THE WITNESS:  When a reviewer reviews and

9  classifies the content, upon that action, it gets

10 directly submitted to the NCMEC.

11         THE COURT:  Thank you.  I think that's

12 precisely what he was asking.  Thank you.

13     Q.  BY MR. BARTON:  Now, in some of these, if we

14 look at -- well, let's look at the first one on page 2.

15 There's a file that's identified as "uploadlog.csv."

16     A.  I see it.

17     Q.  And there's a question:  "Did reporting ESP,"

18 meaning electronic service provider, "view entire

19 contents of the uploaded file?"  And the answer is "Yes."

20         What is the procedure employed by Dropbox to

21 make sure that the reviewer actually reviewed the entire

22 file?

23     A.  The only way for this question to be answered

24 as yes is if a reviewer has reviewed and classified the

25 content.

26     Q.  So let's say that we're talking about a video.

1  It looks like the second one is an MP4, which is probably

2  a video; right?

3       A.  Correct.

4       Q.  So let's say that the viewer reviewed the first

5  three seconds on that video and, based on that, was able

6  to make a classification and didn't review the remaining

7  three minutes of the video.  How would we know whether

8  that occurred?

9       A.  Based on our training, we are required to.

10      Q.  So based on -- do you know what the -- so you

11  don't know who trained this reviewer; right?

12      A.  I do not.

13      Q.  And you don't know what type of quality control

14  there was for this reviewer in May 2020; correct?

15          MS. DAVIS:  Objection.  Asked and answered.

16          THE COURT:  Sustained.  I believe that has been

17  answered previously.

18      Q.  BY MR. BARTON:  Is the entry of "yes" to that

19  question data that's input by the reviewer him- or

20  herself?

21      A.  No.  That is generated upon classification and

22  submitting the review.

23      Q.  What does that mean, "generated upon

24  classification"?

25      A.  NCMEC has an API that Dropbox uses that, again,

26  upon classification of CSAM, will generate this answer.

1      THE COURT:  Can I just -- for my own

2  clarification?

3      You've got to help me with the acronyms.  API?

4      THE WITNESS:  I'm actually not 100 percent sure

5  on the acronym myself, but it is a --

6      THE COURT:  What does it refer to?

7      THE WITNESS:  It is basically the CyberTipline

8  form.  So if you have -- go to the website of NCMEC, you

9  can kind of manually upload the file, et cetera, et

10  cetera.  This kind of automatically does that upon

11  somebody reviewing something.

12      THE COURT:  So if I -- may I?

13      If I understand the path of your testimony on

14  this point, going back to his earlier question, let's say

15  there's a video that's three and a half minutes.  The

16  reviewer watches the first 30 seconds and says, Oh, yeah

17  that's A2 or whatever, uploads it, the A2 judgment, as it

18  were, to the NCMEC file.  Then NCMEC generates the "yes"

19  as to the review of the file?

20      THE WITNESS:  Not quite.  If we classify

21  something as A2, it would be marked as "yes."

22      THE COURT:  Okay.  Forget about what

23  classification I chose.  Just the fact of a

24  classification --

25      THE WITNESS:  Correct.

26      THE COURT:  -- would generate from NCMEC a

1   "yes, reviewed the entire file" notwithstanding that the

2   person stopped three minutes before the end of the file,

3   the reviewer?

4           THE WITNESS:  I would not say that NCMEC is

5   answering that question.

6           THE COURT:  Okay.  So it's the reviewer

7   answering the question by uploading a "yes"?

8           THE WITNESS:  The answer "yes" is caused by the

9   reviewer's classification.

10          THE COURT:  Got it.  I think I understand.

11          Go ahead.

12      Q.  BY MR. BARTON:  So that would be a default

13  answer that is put in based on the form that NCMEC has

14  the reviewer fill?

15      A.  Yes.  If something falls between A1 and B2, the

16  answer would be yes.  And if it is not considered CSAM,

17  then nothing happens.

18      Q.  So the answer "yes" is not something that is

19  input by the reviewer.  It is something that's generated

20  by the NCMEC report form?

21      A.  Yes.  But it is not generated by NCMEC

22  themselves.  It is generated by a tool that we use due to

23  our action.

24          THE COURT:  That is to say the classification

25  that's imposed by the reviewer is what triggers the

26  default answer; is that correct?

1      THE WITNESS:  Correct.

2      THE COURT:  Thank you.

3      Q.  BY MR. BARTON:  So if a reviewer reviewed a

4  portion of a file and reached a classification, it would

5  indicate "yes" regardless of whether the reviewer

6  actually reviewed the entire file; is that correct?

7      A.  Yes.

8      THE COURT:  Regardless of what classification

9  they reach?

10      THE WITNESS:  If it falls between A1 and B2,

11  then yes.

12      THE COURT:  Okay.

13      Q.  BY MR. BARTON:  And when you say "between A1

14  and B2," you mean whether it's classified A1, A2, B1, or

15  B2, any of those four classifications result in "yes"

16  appearing in the CyberTip report?

17      A.  That's correct.  That falls under CSAM.

18      Q.  Looking back at Exhibit 1, the NCMEC report --

19  and I'm looking at the page numbers on it.  So I'm

20  looking at pages 6 and 7.  Are pages 6 and 7 information

21  generated by NCMEC and not by Dropbox?

22      A.  6 and 7 is referencing Section B portions?

23      Q.  Yes.  Yes.

24      A.  These are describing classifications and

25  definitions.  I believe these are on -- page 6, I

26  believe, is provided by NCMEC.  And portions of page 7,

1  like the file name, are provided by Dropbox.

2      Q.  So there's a categorization column, Section B

3  on page 7.  And regarding all except two of the files

4  that are addressed, the categorization is unconfirmed; is

5  that correct?

6      A.  That's how it reads, but I'm not sure who is

7  providing that.

8      Q.  And as to another, the categorization is "child

9  unclothed," correct, the third one -- no.  The second

10  one?

11      A.  Correct.

12      Q.  And as to the fourth one, it says "apparent

13  child pornography"?

14      A.  Correct.

15      Q.  And as to all the remaining ones, presumably

16  another 10 or 12, it's unconfirmed; correct?

17          MS. DAVIS:  Objection.  He testified he doesn't

18  know what that -- where that comes from.

19      Q.  BY MR. BARTON:  Correct?

20          MS. DAVIS:  I just objected.

21          THE COURT:  I think he's not asking where it

22  comes from.  He's asking what the report says.

23          MS. DAVIS:  I think it's a different question

24  because he's asking is it unconfirmed, an answer to that

25  question.

26          THE COURT:  I don't have the document in front

 1 | of me, so it's hard for me to follow along.  But --

 2 |         MR. BARTON:  If it's okay with opposing

 3 | counsel, I'll provide a copy of the report to the Court.

 4 |         MS. DAVIS:  That's fine.

 5 |         THE COURT:  Thank you.

 6 |         And we're talking about which page?

 7 |         MR. BARTON:  Page 7.  The page numbers are in

 8 | the upper right-hand corner.

 9 |         THE COURT:  Yeah.  There's -- this is the

10 | page 7 I'm looking at.  Am I looking at the right page?

11 |         MR. BARTON:  No.

12 |         THE COURT:  What a surprise.

13 |         MR. BARTON:  It's the second page of Section B.

14 | I hope I gave the Court a full copy.

15 |         THE COURT:  You might want to take a second

16 | look at this.

17 |         MS. DAVIS:  Your Honor, can I just give you my

18 | computer for now?

19 |         THE COURT:  Sure.

20 |         Here's what I have as Section B, Mr. Barton.

21 | Yeah.  That's not what's on that page 7.

22 |         MR. BARTON:  It is not what's on that page 7.

23 | This appears to be different from Exhibit A -- Exhibit 1.

24 | I'm sorry.

25 |         THE COURT:  That's okay.  I get it.

26 |         MR. BARTON:  I don't know why there are

1   different copies in existence of --

2          THE COURT:  I'm the one who is in the dark

3   here, Mr. Barton.

4          MR. BARTON:  Well, I'm in the dark on that

5   issue as well.

6          THE COURT:  Can I make a suggestion?  Why don't

7   we take a break.  Let's take a break until 11:00 o'clock.

8   You guys can get the documents in order.

9          I understood, just for your edification,

10  Ms. Davis, much of this testimony and questioning goes to

11  the motion to suppress more so than the prelim, and that

12  has animated the rulings I've been making.

13         We're in recess.

14         MR. BARTON:  Thank you.

15         MS. DAVIS:  Thank you, Your Honor.

16         (The proceedings were in recess.)

17         THE COURT:  We're back on the record.

18  People vs. Levy.

19         And you may continue your examination.

20     Q.  BY MR. BARTON:  Mr. Wulff, on Exhibit 1, the

21  copy you have in front of you, there's a Section B.  That

22  Section B is entitled "Automated Information Added by

23  NCMEC Systems"; correct?

24     A.  Yes.

25     Q.  And the information there is not information

26  provided by Dropbox?

1      A.   It doesn't sound like it, but the file names

2   are file names from Dropbox.

3      Q.   If we go to the next section, Section C, that

4   section is entitled "Additional Information Provided by

5   NCMEC"; correct?

6      A.   Yes.

7      Q.   And the NCMEC classification is "Apparent Child

8   Pornography (Unconfirmed)"; correct?  That's in the first

9   field?

10      A.   That's what it says here.

11      Q.   And the information other than the file

12   names --

13      A.   There's a second line there as well.

14      Q.   It says, "Files Not Reviewed by NCMEC";

15   correct?

16      A.   Correct.

17      Q.   And the information in Section C other than the

18   file names is not information that was provided by

19   Dropbox; correct?

20      A.   That's correct.

21      Q.   When -- how does a file get initially flagged

22   for review in May of 2020?

23      A.   At that time, there's a variety of ways, one of

24   which could be a user report.  So what that means is

25   somebody, you know, flagging or reporting a Dropbox link

26   to Dropbox themselves.  Another means, at the time, could

1  be through, you know, industry-wide detection methods.

2  Like, a very common one is called PhotoDNA, which uses

3  hash-matching technology.  I can't think of other means

4  at the moment.

5      Q.  Does the information by Dropbox include the

6  date and time when the file was accessed or downloaded or

7  uploaded?

8      A.  I'm not sure at the moment.

9      Q.  Do you know by looking at Exhibit A [sic] or

10  some other record when the reviewer actually received the

11  report regarding the files that were the subject of the

12  CyberTip?

13      A.  Could you rephrase?

14      Q.  Sure.

15      Do you know when the reviewer who reviewed the

16  files that resulted in the CyberTip that's

17  Exhibit Number 1 actually conducted their review?

18      A.  At this moment in time, I don't know.

19      Q.  Other than the answer "Yes" regarding "Did ESP

20  view entire contents of uploaded file," is any other part

21  of the information contained in Exhibit A -- strike

22  that -- of Section A of Exhibit 1 automatically

23  generated?

24      A.  Upon classifying and reviewing content, if it

25  is true CSAM, things like an IP address would be

26  populated just in the same way that the answer "Yes"

1 would be populated.

2      Q.   One of the things that they have for each file

3 is "Did Reporting ESP view the EXIF of uploaded file?"

4 Do you see that?

5      A.   Yes.  And it says the information is not

6 provided by the company.

7      Q.   Right.  Does the EXIF file indicate when the

8 image or video was created or when it was reviewed?

9           MS. DAVIS:  Objection.  Relevance.

10          THE COURT:  Yeah.  I'm not sure what an EXIF

11 file is.

12     Q.   BY MR. BARTON:  Then let me try this question:

13 Can you tell us what an EXIF file is?

14          THE COURT:  Thank you.

15          THE WITNESS:  I actually can't.  It doesn't

16 look like it's information provided.

17          THE COURT:  That is, when you say "It doesn't

18 look like it's information provided," by Dropbox?

19          THE WITNESS:  I'm assuming when it says not

20 provided by company, "company" here is referring to

21 Dropbox.

22          THE COURT:  Thank you.

23          You have to remember you guys have the

24 advantage of looking at that.  I'm in the dark over here.

25 Thank you.

26     Q.   BY MR. BARTON:  Do you know whether the

1  reviewer who is reviewing the material has access to this

2  EXIF file?

3          MS. DAVIS:  Objection.  Relevance.  Lack of

4  personal knowledge.

5          THE COURT:  Yeah.  I'm not sure it is relevant

6  because if I understand correctly, the document indicates

7  that that file is not created by Dropbox.  So I'm not

8  sure what is it they're accessing.

9      Q.  BY MR. BARTON:  Do you know what an EXIF file

10  is?

11          MS. DAVIS:  Same objection.

12          THE COURT:  That's overruled because it may be

13  foundational to the whole thing.  I don't know.

14          THE WITNESS:  No.

15          THE COURT:  You folks have the disadvantage of

16  coming into the most computer illiterate courtroom in the

17  entire building.

18          MR. BARTON:  I have no further questions for

19  this witness.

20          THE COURT:  Thank you.

21          Anything else, Ms. Davis?

22          MS. DAVIS:  Very briefly, Your Honor.

23          THE COURT:  Please go ahead.

24                    **REDIRECT EXAMINATION**

25      Q.  BY MS. DAVIS:  Is it Dropbox's policy and

26  procedure that the reviewer review the entirety of the

 1 | file?
 2 |      MR. BARTON:  Objection.  Vague as to time.
 3 |      THE COURT:  I'm assuming it's based on -- the
 4 | question is based on his current knowledge and his
 5 | understanding that the procedures haven't changed.
 6 |      Is that the thrust of your question, ma'am?
 7 |      MS. DAVIS:  Yes, Your Honor.
 8 |      THE COURT:  I'll allow it.  Go ahead.
 9 |      THE WITNESS:  Yes.
10 |   Q.  BY MS. DAVIS:  And lastly, then, from looking
11 | at People's 1, is it your opinion that this is, in fact,
12 | a CyberTip generated or the information contained within
13 | generated from the Dropbox legal team?
14 |   A.  The information in this CyberTip?
15 |   Q.  So basically is this a CyberTip that was
16 | generated based on information from Dropbox?
17 |   A.  Yes.
18 |      MS. DAVIS:  Nothing further, Your Honor.
19 |      THE COURT:  All right.  Thank you.
20 |      Mr. Barton, anything else?
21 |      MR. BARTON:  Yes.
22 |                 **RECROSS-EXAMINATION**
23 |   Q.  BY MR. BARTON:  Exhibit 1 isn't a Dropbox file,
24 | isn't a Dropbox document; correct?
25 |      MS. DAVIS:  Objection.  Asked and answered.
26 |      THE COURT:  Yeah.  I'm aware it's not a Dropbox

1   file.

2       Q.  BY MR. BARTON:  And some of the material

3   contained in this was not created by Dropbox?

4           MS. DAVIS:  Objection.  Asked and answered.

5           THE COURT:  Yeah.  Sustained.  We already have

6   those in.

7           MR. BARTON:  All right.

8           THE COURT:  It's -- the tip is generated based

9   on information from Dropbox, but not everything in the

10  tip was provided by Dropbox.

11          MR. BARTON:  Right.

12          THE COURT:  Even somebody as slow as me could

13  keep up with that.

14          MR. BARTON:  The purpose of my asking was to

15  try to show that this doesn't qualify as a business

16  record of Dropbox.

17          THE COURT:  No, I understand that.

18          MR. BARTON:  Then I have no further questions.

19          THE COURT:  All right.  Thank you.

20          Anything else then, ma'am?

21          MS. DAVIS:  No, Your Honor.

22          THE COURT:  May this witness be excused?

23          MS. DAVIS:  Yes, Your Honor.

24          MR. BARTON:  Yes, Your Honor.

25          THE COURT:  Thank you very much, Mr. Wulff.  We

26  appreciate the time you've given us and your patience

1    with all of us.  You are excused.

2              (Conclusion of excerpted proceedings.)

                CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

                              --o0o--

        I, JACQUELYN HAUPT, CSR, RPR, certify that I am

a Certified Shorthand Reporter and that I recorded

verbatim in shorthand writing the following proceedings

completely and correctly to the best of my ability.

            COURT:      SUPERIOR COURT OF THE
                        STATE OF CALIFORNIA,
                        IN AND FOR THE COUNTY OF SAN MATEO.

            JUDGE:      HONORABLE DONALD J. AYOOB.

            ACTION:     THE PEOPLE OF THE STATE OF
                        CALIFORNIA, Plaintiff, versus
                        ALEXANDER LEVY, Defendant,

                        Case No. 21-SF-006855-A.

            DATE:       THURSDAY, NOVEMBER 17, 2022.

        I further certify that I have caused said

shorthand writing to be transcribed into typewriting by

Computer-Aided Transcription, and that the preceding

pages 1 through 50, inclusive, constitute an accurate and

complete transcription of my shorthand writing for the

action and date specified above.


            Dated:  Monday, August 7, 2023.


            JACQUELYN HAUPT, CSR, RPR
            CSR License No. 13964