1     UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF VIRGINIA
2          ALEXANDRIA DIVISION

3

4   UNITED STATES OF AMERICA        )
                                    )
5                                   )
         VS.                        )   1:23-CR-65  CMH
6                                   )
                                    )   ALEXANDRIA, VIRGINIA
7                                   )   SEPTEMBER 29, 2023
                                    )
8   JAMES GORDON MEEK              )
    _____)
9

10

11

12

13
   _____
14
                **TRANSCRIPT OF SENTENCING**
15      **BEFORE THE HONORABLE CLAUDE M. HILTON**
             **UNITED STATES DISTRICT JUDGE**
16 _____

17

18

19

20

21

22

23

24  **Proceedings reported by stenotype, transcript produced by**

25  **Julie A. Goodwin.**

# A P P E A R A N C E S

FOR THE PLAINTIFF:
        UNITED STATES ATTORNEY'S OFFICE
        By:  MS. MCKENZIE HIGHTOWER
        Assistant U.S. Attorney
        2100 Jamieson Avenue
        Alexandria, Virginia  22314
        703.299.3773


FOR THE DEFENDANT:
        BURNHAM & GOROKHOV, PLLC
        By:  MR. EUGENE V. GOROKHOV
        1750 K Street NW
        Suite 300
        Washington, DC  20006
        202.386.6920
        eugene@evgpllc.com



OFFICIAL U.S. COURT REPORTER:
        MS. JULIE A. GOODWIN, RPR
        United States District Court
        401 Courthouse Square
        Alexandria, Virginia  22314

1   (SEPTEMBER 29, 2023, 10:23 A.M., OPEN COURT.)

2         THE COURTROOM DEPUTY:  Criminal Number 23-65, *United*

3 *States of America versus James Gordon Meek*.

4         MS. HIGHTOWER:  McKenzie Hightower on behalf of the

5 Government, Your Honor.

6         MR. GOROKHOV:  Good morning, Your Honor.  Eugene

7 Gorokhov here on behalf of Mr. Meek, who is coming out.

8     (DEFENDANT NOW PRESENT.)

9         THE COURT:  Counsel, have you and your client had an

10 opportunity to review this presentence report?

11         MR. GOROKHOV:  We have, Your Honor.  We've reviewed it

12 in detail, yes, sir.

13         THE COURT:  Any corrections you wish to make to it?

14         MR. GOROKHOV:  No, Your Honor, beyond what I've

15 already stated in my letter to the probation officer.  And if I

16 may, I'll just get this out of the way, and I think it will

17 make my argument today much shorter.

18         I think our general point here is that the

19 presentence report and the government's, a lot of what they've

20 put forward, are matters that are simply not -- not correct.

21 They're matters that the government investigated for a long

22 time.  They never indicted on these issues because they didn't

23 pan out for the government.  They are not part of the statement

24 of facts in this case.  And for the government to walk away

25 from a trial that -- on these issues that Mr. Meek would have

1  prevailed on, it's not fair.

2         And I don't know if they'll do that today.  I just

3  met Ms. Hightower for the first time today.  I know she's kind

4  enough to stand in for the prosecutors that I've been dealing

5  with in this case since -- for 17 months, but I would say, Your

6  Honor, this case should be about the conduct that the parties

7  after a very robust process agreed is correct.  And it's

8  serious conduct, and Mr. Meek accepts responsibility for that

9  very serious conduct.  But it's not about, you know, walking

10  away from things that aren't accurate and then presenting them

11  as if they are.

12         And I hope my -- my filing, Your Honor, the other

13  day, and my response, I think it largely put to rest a lot of

14  what the government put out there.  So, that's my comment on

15  the presentence report, and I will have argument for the Court.

16  Thank you, Your Honor.

17         THE COURT:  All right.  Well, go ahead and give me

18  your argument.

19         MR. GOROKHOV:  Yes, sir.

20         So, Your Honor, I think this case, it's an

21  understatement to say that this case comes as a profound shock

22  to anybody who has known Mr. Meek and known what Mr. Meek is

23  about.  Mr. Meek has been a journalist who tirelessly and

24  fearlessly worked to uncover human rights abuses and corruption

25  and to do good in the world.  And he went from that status to

1   as recently as four days ago, Your Honor, being labeled as a

2   pervert in the national media.

3          Mr. Meek has -- was on the eve of receiving a

4   humanitarian award, Your Honor, for the work he did with

5   hostages and for rescuing hundreds of refugees from

6   Afghanistan, U.S. allied refugees, including hundreds of

7   children and being placed in a lockdown unit at the Alexandria

8   Detention facility for 22 hours a day in his pretrial

9   confinement for a period of six and a half months.

10          And it's hard to reconcile what he's done for 30

11   years with what he's done in this offense, but I do think

12   there's a very clear answer that emerges from a 16-hour

13   psychological evaluation here.  And the answer is that this man

14   has a disorder, pedophilic disorder.  It's a diagnosis.

15          It's not ambiguous.  It's there.  And that disorder

16   is the reason why Mr. Meek was drawn to these horrible

17   materials on the Internet.  That's the reason why he obtained

18   these materials, that's the reason why he traded them, and

19   there's no mystery about that.

20          Now, what I want to be clear about is that this

21   disorder is not an excuse for the conduct.  The conduct needs

22   to be prosecuted, it needs to be punished, and it needs to be

23   treated.  But I think at the same time what sometimes gets

24   lost, Your Honor, is that nobody chooses, at least certainly

25   not Mr. Meek, to choose to have this disease, this illness,

1  this curse.

2         You know, you can call it whatever you want.  It's

3  a horrible thing to live with because not only does it

4  perpetuate the victimization of children, but it also causes a

5  lot of shame and alienation and distress for the people who

6  struggle with it secretly as it festers and gets out of

7  control.  And that's what happened in this case, Your Honor.

8         Now, you know, in the government's sentencing

9  memo -- and again, this is not directed to Ms. Hightower, but

10  in their sentencing memo I think what is significant is that

11  they have not said one kind word, one positive word about a man

12  whose life is full of good deeds.  And I think that shows a

13  little bit of a lack of objectivity, Your Honor.  And it shows

14  a failure to engage with.  How did this disorder turn into a

15  crime.

16         And so I just want to take a couple of minutes,

17  Your Honor, to talk about that because that is the heart of

18  this case.

19         While the disgusting child abuse materials in this

20  case have been detailed in painful detail, not just in the

21  record of this case but in the media, what has not been

22  detailed are the other materials that Mr. Meek had on his

23  computer as a journalist.  Materials involving torture,

24  executions, beheadings, human rights atrocities that Mr. Meek

25  looked at for thousands of hour -- for thousands of hours over

1  the course of decades.  Since 2011, when he started reporting

2  on terrorism, he's been consuming as a journalist day in and

3  day out these horrific materials, Your Honor.

4          And on top of that, as the people who have written

5  to this Court have said, that in -- even outside of his role as

6  a journalist, Mr. Meek has never hesitated to take on the pain

7  and the grief and the suffering of people who have lost their

8  children at war, people who have lost family members as

9  hostages.

10          Mr. Meek's colleague, Andrew Fredericks, talks

11  about how he spent hours on the phone with families who are

12  grieving over the loss of their loved ones and would drive

13  hundreds of hours to a funeral.

14          Terri Criscio, who lost her son at war in this

15  case, talked about how Mr. Meek was a friend and is a friend

16  who got her through her hardest days.

17          And the Reverend Kathleen Day, Your Honor, talks

18  about Mr. Meek as a person who long after his role as a

19  journalist was over -- long after his role as a journalist was

20  over, Your Honor, Mr. Meek continued to be in the lives of the

21  people who had suffered immense tragedies as a matter of his

22  choice to help those people.

23          And we don't need a psychologist to tell us,

24  although she did, but we don't need a psychologist to tell us

25  that when you take a preexisting psychological disorder and you

put on top of that trauma and pain and grief, there's going to
be a breaking point.  And that breaking point in this case,
Your Honor, was Mr. Meek's offense conduct.

Five years ago, before -- before Mr. Meek was ever
apprehended in this case, Mr. Meek talked openly in an
interview about his struggle with mental health from reporting
on these issues, from looking at this footage.  And he said in
black and white text that, you know, I'm losing -- you know,
this -- this stuff causes me to lose my grip on reality, but
it's important to keep reporting on it because somebody has to.

Now, I'm getting close to the end, Your Honor, so
thank you so much for hearing me out because I do think it's
important to -- to address here the folks that have come in to
support Mr. Meek.

Beyond the 16-hour psychological evaluation where
Dr. Boyd said that Mr. Meek was clearly guilty -- she said his
words were that he bluntly acknowledges the harm of his
conduct.  Mr. Meek badly wants to change.  He badly wants to
get treatment, and he has started treatment.  And Mr. Meek has
an extremely low chance of recidivism.

We have a lot more than that here, Your Honor.
Mr. Meek has had the support of members of the military at the
highest levels.  People who served in law enforcement, people
who served in national security at the highest levels of this
country.  He has the support of religious figures,

investigative journalists and gold star families who lost
children on behalf of this country.  And those people have not
known Mr. Meek for 16 hours, like Dr. Sarah Boyd, or for one
session for the presentence interview.  They have known
Mr. Meek for years, multiple years; in some cases, Your Honor,
multiple decades.

They have read the facts in this case, and they
have read even the allegations in this case that have gone
away.  The worst of the worst.  And these people unambiguously
come forward and they say Mr. Meek is a good man.  He's a
fundamentally a good man.

And these people don't talk in broad statements or
platitudes.  They -- they talk in very specific facts.  And
they don't shade the truth.  They don't play with the truth.

And one -- Your Honor, I'll just say an agent of
28 years, a Special Agent with the FBI, Raymond Gannon, and a
Gold Star father who as part of his role with the FBI
investigated these types of cases, has said in his letter that
Mr. Meek is a hero.

The other point, Your Honor, that comes through
from these people who support Mr. Meek is that he's profoundly
remorseful for what he's done.  He wants to rehabilitate
himself, and he will never ever be charged with any crime, let
alone this kind of crime again.  He won't do it.

And I think that's very significant, Your Honor,

1   because these are individuals who have given -- in some cases

2   they've bled for this country at war.  In some cases they've

3   lost children for this country to keep our citizens, to keep us

4   safe.

5           And if they thought for a minute that Mr. Meek

6   posed even a tiny, minute risk to the most vulnerable citizens

7   of our society, they would not stand by him.

8           Mr. Meek is here today, Your Honor, in his darkest,

9   most shameful moment in his life.  And many days he cannot

10  imagine a future.  But these people come forward, these

11  remarkable Americans come forward and they say, not only will

12  we stand by him now and in the future, but Mr. Meek will go on

13  to do good again.  And that's a remarkable statement.  And I

14  think that tells you everything you need to know, Your Honor,

15  about this man.

16          60 months is a tremendously long sentence for

17  anybody, let alone a person who's never had any contact with

18  the criminal system at all - zero.  And a sentence of 60 months

19  will allow this man to -- to rebuild his life, and it will meet

20  every single goal of sentencing, every conceivable goal of

21  sentencing.

22          Thank you, Your Honor.

23          MS. HIGHTOWER:  Your Honor, I just want to briefly say

24  that the government is completely within its right to bring in

25  facts outside the statement of facts, and that's exactly what

1    we did in our sentencing paper.

2         I also just wanted to briefly respond to something

3    the defense counsel said when he said, quote, No one chooses to

4    have this illness, end quote.

5         Well, that might be true, Your Honor.  They do

6    choose to act on it.  And I'll -- I'll touch on that briefly a

7    little bit later on, but the government is recommending a

8    guideline sentence between 151 and 188 months because the

9    defendant transported, distributed, and received CSAM online.

10        He sought out communities and individuals to

11   further these goals.  And he posed as a minor himself to gain

12   minors' trust.

13        He was not content with just exchanging CSAM with

14   individuals online, Your Honor.  He was a member of groups

15   called cocks, cunts, and kids, apparently devoted exclusively

16   to the exchange of Child Sexual Abuse Material.

17        Briefly, I'd like to respond to a few key points in

18   the defendant's sentencing paper as well.

19        First, the paper cherry picks from his own mental

20   health evaluation, Your Honor.  The doctor noted that his

21   distorted thinking and that he relied on it to rationalize

22   legal conduct and that he off-loaded some of the blame for the

23   individual's sexualized behavior, and placed the blame on the

24   broader culture in society.

25        However, society is not to blame here, Your Honor.

1  Mr. Meek had years to stop his conduct.  And instead, he made a

2  choice each time, over multiple years, to keep exploiting

3  minors.  He chose to salivate over a video of a toddler being

4  raped, and he found community with other individuals who wanted

5  to rape toddlers with Mr. Meek.

6        Second, the defendant's sentencing paper emphasizes

7  the contributions he has made to society in his life.  The

8  government acknowledges that.  But Mr. Meek has lived a double

9  life as well, Your Honor.

10        In one sphere, he has received awards and accolades

11  for his actions.  And now, in the other, it is time for him to

12  receive the consequences of his illegal conduct.  This is

13  conduct that hurt real children, Your Honor.

14        He received and distributed images of BDSM and

15  vaginal penetration of very young children.  The only way he

16  could receive these images is if these horrific acts were

17  performed on real children.  He is perpetuating this horrific

18  industry, and Mr. Meek needs to be held accountable for that,

19  Your Honor.

20        Third, the defendant's sentencing paper

21  inappropriately tries to shift blame for Mr. Meek's conduct

22  through his victims.  He goes on at length about a particular

23  minor's supposed online conduct, even going so far as to refer

24  to this minor victim whose images were circulated as the

25  subject of the investigation.

1    However, what is clear from the record is that the

2  defendant sought out, identified Minor 2 online, learned her

3  interests, and then tried to use these interests to manipulate

4  her into engaging with him.  He also had 11 nude pictures of

5  her on his device, Your Honor.

6    He also tries to discount the screen shots of him

7  holding his penis while chatting with an individual who

8  identified himself as a minor on Omegle.  Regardless of how old

9  this individual was actually, this individual told him he was a

10  minor.  And instead of logging off at the platform, Mr. Meek

11  continued to engage with the minor.  He actually took a

12  screenshot so he could preserve the minor's contact information

13  and be in touch with her on a more convenient platform.

14    Fourth and final, Your Honor, the defendant has

15  consistently, for at least a decade, demonstrated the behavior

16  of a man determined to seek out images and videos of the sexual

17  abuse of children online.  He's interested in boys and girls,

18  from infants to teenagers, another point he downplayed during

19  the psychological evaluation.

20    These images included sadistic and masochistic

21  abuse of children.  And he also directly sought out minors

22  online, including for sexual encounters.

23    Based on this behavior, the government believes

24  that a guideline sentence is warranted, necessary, and

25  appropriate.

1          Just briefly touching on fines and special

2   assessment, Your Honor, the defendant, as evidenced by the PSR,

3   can pay these, so the government respectfully requests a

4   $10,000 mandatory assessment under the Justice for Victims of

5   Trafficking Act.  And, Your Honor, we request a reasonable

6   special assessment under the AVA Child Pornography Victim

7   Assistance Act.

8          We respectfully ask restitution to be set out for

9   another day, and a forfeiture order has already been entered at

10  the plea agreement, Your Honor.

11          THE COURT:  Okay.

12          MR. GOROKHOV:  Your Honor, here we are once again.  I

13  had hoped that by filing a response that meticulously and in

14  detail dismantles the things that were just repeated here

15  again, that they wouldn't be repeated here again, and yet, here

16  they are being repeated again, after I've gone through them in

17  painful detail.  I -- I --

18          THE COURT:  Well, you know, I denied your motion on

19  that, and I don't see any reason to go beyond that.  I can sort

20  these facts out.

21          MR. GOROKHOV:  Your Honor, I think -- I think there's

22  maybe some confusion here.  This is not anything about the

23  fourth -- Your Honor, this is not anything about the search and

24  seizure in this case.  This is about the actual evidence of --

25  that's being discussed by the government at sentencing.

1    THE COURT:  I say I can sort that out.  You don't need

2    to go any further with it.

3         MR. GOROKHOV:  Thank you, Your Honor.

4         I just -- I hope you can understand my frustration

5    that when I -- when I try to do that they just come back and

6    say it -- say something that they didn't -- they backed off of

7    a trial on.

8         THE COURT:  You can -- you can handle your

9    frustrations, and I can straighten it out.

10        MR. GOROKHOV:  I appreciate that, Your Honor.

11        THE COURT:  We're in good shape here.

12        MR. GOROKHOV:  Thank you, sir.

13        Mr. Meek would like to address the Court, Your

14   Honor, if I may...

15        THE COURT:  We'll give him an opportunity.

16        MR. GOROKHOV:  Thank you, sir.

17        And one -- one last thing since we talked about

18   fines and special assessments.  Mr. Meek will have to pay a

19   minimum special assessment of $5,000 per count, which is

20   $10,000.  That's as to each count.  That is -- you know, the

21   standard special assessment is $100, so that's already a

22   significant number.  And on top of that, Your Honor, we're

23   going to be in the process of working out the restitution.

24        So, he's going to have significant financial

25   circumstances from this.  Mr. Meek has a lot of obligations to

1   his children as well and his family.  We would ask the Court

2   not to impose a fine, an additional fine on top of all that for

3   that reason.

4           Thank you, sir.

5           THE COURT:  All right.  Mr. Meek, would you come to

6   the podium.

7           THE DEFENDANT:  Your Honor, there is a time for

8   silence and a time to speak.  Thank you for the opportunity to

9   speak to you today about my offenses.

10          I was a journalist.  I wrote countless stories

11  about the misconduct of others.  I never respected those who

12  didn't own their mistakes, so I will not run for cover here.

13          The buck stops with me.  The mistakes were all

14  mine.  I broke federal law, I violated God's law, and I

15  undermined my own personal ethos to always help people.

16  Instead of loving kindness, I caused widespread pain and

17  suffering among everyone who ever had faith in James Gordon

18  Meek.

19          First, among those harmed are the victims of child

20  exploitation.  I apologize and ask for their forgiveness.

21          What I have to say to you today is what I would say

22  to the two people I cherish most in the world and zealously

23  protected:  My two daughters, ages 16 and 20.  And that is the

24  brutal truth.  I have let down my daughters and countless

25  others, and I owe them all a sincere apology.

1  When I was raising my daughters with their mom, I

2  often would tell them:  Do the right thing, the rest will

3  follow.

4  Do the right thing, the rest will follow.

5  But eventually, I did the wrong thing, and public

6  shame and disgrace have followed, as it should.  I also taught

7  my children that when you make a mistake, when you do the wrong

8  thing, your obligation to do the right thing is not over.  You

9  must own your errors and hold yourself out for accountability.

10  I committed the offenses, which I pled guilty to,

11  sir, and the law requires you to hold me accountable.  I ask

12  you to do that, too.  In fact, I need you to hold me

13  accountable, for I acknowledge my transgressions.  My sin is

14  ever before me, as the psalmist wrote.  My heart is broken and

15  contrite.

16  I do not know any of those depicted in the images I

17  downloaded, but I have read victim impact statements detailing

18  the abuses and exploitation of two women whose images I

19  possessed.  They have not only suffered childhood abuses by

20  adults, but they have suffered endless trauma as adults from

21  notifications that thousands of men, like me, have viewed and

22  traded the evidence of their exploitation.

23  Many people I have been close to have been victims

24  of sexual abuse, and I know their anguish well.  So to those

25  whose victimization I have contributed to with each click

1    online, I beg you to forgive me.  I am sincerely sorry for all

2    I have done so egregiously wrong, which has caused so much harm

3    to you.

4              A famous former inmate once said:  The cell gives

5    you the opportunity daily to examine your entire conduct, to

6    overcome the bad, and find whatever is good within you.

7              I thank God for giving me more than 4,500 hours

8    completely alone in my cell to examine my entire conduct and to

9    reckon with my terrible, inexcusable sins.

10             I once was a man motivated in my work by moral

11   outrage over injustices, but I fell and transformed into a man

12   morally outrageous.  I wear my shame and remorse like a bag of

13   boulders on my back.  It will never leave me and it never

14   should, for whatsoever a man soweth, that shall he also reap.

15             Had my own children ever been abused, I would have

16   died inside.

17             After 9/11, I investigated many, many human rights

18   abuses.  So to victims of child pornography I say, I should

19   have helped you find accountability, not joined in your online

20   exploitation.  I have the skills.

21             My children, my family, and all those I knew and

22   worked with had every right to expect me to lead a righteous

23   life and to hold myself at all times to the highest ethical

24   standards.  But the great deceiver had a hold of me.  I was a

25   weak man, and out of the light of God's love I fell into the

1   cold, hard shadow of a moral eclipse.  Yet, the Lord saved me

2   last year.  And whether in prison or as a returned citizen, I

3   pledge to you, Judge Hilton, that I will be what the Jesuits

4   call a man for others.  I will work to help the least ones of

5   our society.  We're all worthy of God's forgiveness and His

6   tender mercies.  I will not re-offend.

7              I've read and accept the assessment of Dr. Sarah

8   Boyd, which was extremely painful.  I understand that I have a

9   sexual disorder that crossed a red line into illegal conduct

10  for a long time, but the terrifying process of being

11  apprehended is also what allowed me to finally seek and receive

12  effective psychotherapy.

13             I know I need a lot more help.  I have no

14  illusions.  There's a long road ahead.  And I hope to resume

15  therapeutic treatment during my incarceration and beyond, as I

16  also continue to seek help from the Lord.

17             Sir, my beloved relationship with my daughters has

18  been severely damaged by my crime.  They don't know the man

19  that they've read about this year.  I hope you'll forgive me.

20  My tears are not for myself, but for my daughters.

21             Yet, when they learned I took responsibility for my

22  actions, they said that at last.  After the crucible I have put

23  my family through, they recognized the dad they know, again,

24  and that, too, is why I plead with you to hold me accountable.

25             I've been fortunate that people of strong faith

1  have not only stood by me but helped guide me to the Lord.  I

2  will continue firmly on that path.

3          Thank you and may God bless you and keep you, sir.

4          THE COURT:  All right.  Well, Mr. Meek, I find the

5  guideline factors in this case to be properly assessed at a

6  range of 151 to 188 months.

7          And I find because of your financial condition and

8  the other assessments involved with the imposition of any fine

9  or cost is not warranted, other than those that I'm about to

10 impose.

11          In considering the factors under Section 3553,

12 considering the circumstances involved in this offense, your

13 prior record, I find that a sentence somewhat below the

14 guideline range would be appropriate.

15          And it will be the sentence of the Court as to

16 counts one and three that you be committed to the custody of

17 the Attorney General to serve a term of 72 months, a ten-year

18 period of supervised release, pay a special assessment fine of

19 $100.

20          Now, the sentences in these two counts will run

21 concurrently with one another.

22          I will also impose, as I believe I'm required to

23 do, a $5,000 assessment as to each count for the nature of

24 these offenses.

25          Your supervised release will be subject to the

 1    terms and conditions of the standard conditions of probation,

 2    and in addition, the special conditions that have been set out

 3    in the presentence report.

 4            I will advise you that you have the right to

 5    appeal.  It must be done within 14 days.  If you cannot afford

 6    an attorney, one will be appointed to represent you.

 7            THE DEFENDANT:  Thank you, sir.

 8            THE COURT:  And you can present to me -- when you get

 9    the restitution worked out, you can present that order to me

10    and I will enter that.

11            MS. HIGHTOWER:  Yes, Your Honor.

12            I also just wanted to mention there's -- there's no

13    victims that need to be heard today.  And also, we already

14    submitted a --

15            THE COURT:  I'm sorry.  I can't understand you.

16            MS. HIGHTOWER:  I'm sorry, Your Honor.

17        (ATTORNEY HIGHTOWER COMES TO LECTERN.)

18            MS. HIGHTOWER:  I also just wanted to say that there's

19    no victims that wanted to be heard today.  And we also

20    submitted a motion to dismiss the remaining count that has --

21    has already been handed up.

22            THE COURT:  All right.  I'll enter that order a little

23    later in the morning.

24            MR. GOROKHOV:  And if I may, Your Honor.  We would ask

25    for designation at Petersburg FCI.

1          THE COURT:  I will recommend the facility at
2    Petersburg.
3          MR. GOROKHOV:  Thank you, Your Honor.
4              We would also ask for a recommendation for
5    treatment, mental health treatment and drug treatment, Your
6    Honor.
7              And finally, we -- we did have an agreement with
8    the government that we would file a motion to supplement the
9    record on one piece of evidence.  They agreed.  It's a fully
10   agreed motion, and I can file that today, Your Honor, before
11   the end of the day.
12         THE COURT:  All right.  I'll --
13         MR. GOROKHOV:  Thank you, sir.
14         THE COURT:  I will recommend the drug and mental
15   health treatment that you requested.
16             All right.  We'll adjourn until Monday morning at
17   10:00 o'clock.
18         THE LAW CLERK:  All rise.
19             (PROCEEDINGS CONCLUDED AT 10:52 A.M.)
20                          -oOo-
21
22
23
24
25

1   UNITED STATES DISTRICT COURT    )

2   EASTERN DISTRICT OF VIRGINIA    )

3

4           I, JULIE A. GOODWIN, Official Court Reporter for

5   the United States District Court, Eastern District of Virginia,

6   do hereby certify that the foregoing is a correct transcript

7   from the record of proceedings in the above matter, to the best

8   of my ability.

9           I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action in

11  which this proceeding was taken, and further that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14          Certified to by me this 17TH day of JANUARY, 2024.

15

16

17

18                     __/s/_____
                       JULIE A. GOODWIN, RPR
19                     Official U.S. Court Reporter
                       401 Courthouse Square
20                     Alexandria, Virginia  22314

21

22

23

24

25